HUSSEIN SAYYED MUSSALLAM v. EEVA HANNELLE MUSSALLAM

No. 702PA86

(Filed 3 February 1988)

1. **Penalties § 1; Principal and Surety § 1— appearance rather than compliance bond—proceeds payable to school fund**

Where a Finnish court awarded custody of a child to its Finnish mother, the mother brought the child to North Carolina for a visit with the child's Kuwaiti father, the father removed the child to Kuwait, returned to North Carolina alone and refused to return the child to the mother, a superior court judge in a habeas corpus proceeding set a secured bond of $25,000 and ordered the father to appear in the district court with the child, the terms of the bond specifically made its proceeds payable to the State of North Carolina should it be forfeited, the father posted bond and fled the jurisdiction, and the district court ordered the bond forfeited, it was *held* that the bond set by the court in the civil case was an appearance bond intended to guarantee the father's appearance before the court and as a penalty in the event of his failure to appear as ordered rather than a compliance bond, and that under Art. IX, § 7 of the N.C. Constitution, the proceeds of the forfeited bond should be paid to the county school fund rather than to the mother.

2. **Penalties § 1— proceeds from penalties, forfeitures and fines—when payable to school fund**

The provisions of Art. IX, § 7 of the N.C. Constitution relating to the clear proceeds from penalties, forfeitures and fines identifies two distinct funds for the public schools: (1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the State; and (2) the clear proceeds of all fines collected for any breach of the criminal laws.

3. **Principal and Surety § 1— appearance bond rather than bond to ensure return of child**

A $25,000 secured bond was an appearance bond intended to guarantee the appearance of the father in court rather than a bond required by the court under the authority of N.C.G.S. § 50-13.2(c) to ensure the return of a child to the court's jurisdiction.

Justice FRYE dissenting.

Chief Justice EXUM joins in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, 83 N.C. App. 213, 349 S.E. 2d 618 (1986), affirming the order of *Daisy, J.*, entered in District Court, GUILFORD County, distributing the proceeds of plaintiff's forfeited $25,000 secured civil bond to defendant. Heard in the Supreme Court 11 November 1987.

*Douglas, Ravenel, Hardy, Crihfield & Lung, by John W. Hardy, for appellant Guilford County Board of Education.*

*Hatfield & Hatfield, by John B. Hatfield, Jr., for surety-appellees Doris H. Harshaw and Jo Wilkins.*

*Manlin M. Chee and Smith, Patterson, Follin, Curtis, James & Harkavy, by John R. Kernodle, Jr., for defendant-appellee.*

MEYER, Justice.

In 1981 the plaintiff-husband, Hussein Sayyed Mussallam, a Kuwaiti, obtained a divorce from his Finnish wife, the defendant Eeva Hannelle Mussallam, in Kuwait, but did not then seek custody of the child of the marriage. About six months later, the husband filed an action in Finland, where the wife and minor child were then living, seeking custody of the child. The Finnish court granted custody to the wife. In 1985 the wife brought the child to Greensboro, North Carolina, for a visit with the husband who was then a student at North Carolina A&T State University. The husband took the child, removed her to Kuwait, returned to North Carolina alone, and refused to return the child to the wife.

Seeking enforcement of the Finnish custody decree, the wife filed a copy of the custody decree in Guilford County pursuant to N.C.G.S. § 50A-15 and § 50A-23 and on 7 May 1985 filed a motion in the cause for immediate custody of her daughter. The district court entered a show cause order directing the husband to appear on 9 May 1985 with the minor child and requiring that he be held in custody without bond until after the 9 May hearing. On that date, the district court judge modified the order, releasing the husband from custody upon condition that he turn his two passports over to his attorney and that he return for a full hearing. At a 16 May 1985 hearing, the district court entered an order finding that the husband was in willful contempt of the Finnish custody decree and ordering that he be held in custody until he purged himself of contempt "by sending for the minor child, NORA CASSANDRA MUSSALLAM, and bringing her to this Court."

While in custody under this order, the husband petitioned the superior court for a writ of habeas corpus. On 17 May 1985, Superior Court Judge James A. Beaty set a secured bond of $25,000 and ordered the husband to appear before the district

Mussallam v. Mussallam

court with the minor child on 24 May 1985 and to remain within the jurisdiction without removing himself from Guilford County until the child was returned. This order was extended to 31 May 1985. On 25 May 1985, the husband posted bond (comprised of two bonds, one for $20,000 and one for $5,000 through two sureties) and was released from custody. He then fled the jurisdiction, presumably returning to Kuwait. He has not been located since.

On 31 May 1985, when the husband failed to appear, the district court ordered the $25,000 secured bond forfeited immediately. The order and notice of forfeiture was served upon the sureties on the bonds, who filed motions to release the bonds or assess civil damages. A copy of the motions and notice to release the bonds was served upon the appellant, Guilford County Board of Education. The Board filed an answer seeking forfeiture of the amount of the bonds to the Guilford County School Fund. On 25 October 1985, after a hearing, the district court entered an order holding that appellant Board of Education had no interest in the proceeds of the forfeited bonds because the bonds had been set in a civil domestic case "solely for the purpose of producing the child of the parties and not for further proceedings requiring the [husband's] presence."

The Board of Education appealed. The Court of Appeals held that the district court had properly found that the superior court's order was solely for the purpose of ensuring compliance with its order to produce the minor child before the district court and that the combined bond was therefore a compliance bond as opposed to an appearance bond, thus precluding the Board's entitlement to its proceeds. We conclude, to the contrary, that the bond was an appearance bond required for the purpose of ensuring the defendant's presence before the district court and that under our constitution, the Guilford County Board of Education is entitled to the proceeds from its forfeiture. We therefore reverse the decision of the Court of Appeals.

[1] Both the Board and the wife agree that the bond is a civil bond, imposed in a civil proceeding. The wife argues, however, that it is a compliance bond because (1) her goal throughout was to regain custody of her daughter, (2) the goal of the district court and the superior court was to ensure that the child was brought before the court and returned to her custody absent any showing

of good cause by the husband, and (3) the husband's goal was to disobey the orders of the Finnish and North Carolina courts, even if it cost him $25,000 to do so. She analogizes the bond given here to those imposed in claim and delivery matters and civil cases in which noncustodial parents are found in contempt for failure to pay child support. She argues that when such bonds are forfeited, the proceeds are paid to the injured party, not to the school fund, and that the bond here should be similarly treated. N.C.G.S. § 50-13.2(c) (1987). We find the wife's analogy unpersuasive.

Our review of the record demonstrates that the judges who heard various aspects of this case were primarily concerned with the husband's attendance in court. At the 16 May 1985 hearing on the original motion to show cause, the district court made extensive findings of fact. The court observed that (1) the husband had not been released from custody because the court feared that he would flee the jurisdiction; (2) the court had later permitted the husband's release from custody provided he turn his passports over to his attorney; (3) the husband had taken the child to Kuwait and had returned alone to North Carolina; (4) the husband had declared through his attorney that he did not intend to return the child to North Carolina; and (5) the husband had no ties to North Carolina but had the means to flee the jurisdiction. The court then ordered the husband to be taken into custody. When the husband obtained his freedom under writ of habeas corpus, the superior court ordered that his release was to be conditioned on the posting of a secured bond. The title on the bonds in question is "Appearance Bond" and their terms provide in part:

XX  Pretrial Release—The conditions of this bond are that the above named defendant shall *appear* in the above entitled action whenever required and will at all times *render himself amenable to the orders and processes of the Court.* . . .

. . . .

If the defendant *appears* as ordered and otherwise performs the foregoing conditions of this bond, then the bond is to be void, but if the defendant fails to obey any of these conditions, the Court will enter an order declaring the bond forfeited.

(Emphasis added.) The fact that the order of forfeiture and notice bears on its reverse side a notation that this was a civil case does not effect a change in the intrinsic nature of the bonds. The box designated "Surety Appearance Bond" was checked and it provided that the sureties were bound to pay *the State of North Carolina* if the husband failed to appear. Though it would not affect the result we reach, we find no basis for the district court's 25 October 1985 conclusion that the bonds were compliance bonds "solely for the purpose of producing the child" and only incidentally required defendant's appearance. On the contrary, while the orders of the district and superior courts clearly contemplated that the child would be produced before the court at the same time, they were issued primarily to require plaintiff's appearance. The district court's 31 May 1985 order simply ordered the forfeiture of the bonds undertaken by the sureties upon the husband's failure to appear.

The wife argues that even if the bond in question is determined to be an appearance bond given to guarantee *plaintiff's* appearance, it still remains a civil bond, the proceeds of which she is entitled to under article IX, section 7 of the North Carolina Constitution. Article IX, section 7 provides:

> All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7. The section has been codified at N.C.G.S. § 115C-452. The wife interprets article IX, section 7 to mean that the clear proceeds of penalties, forfeitures and fines go to the school fund only if they arise from criminal cases. Since this was a civil case, she argues, no penal laws have been breached and therefore section 7 does not apply to allow the Board to collect the proceeds of the forfeited bond. Although we agree that we are dealing with a civil case here, we cannot accept the wife's interpretation of section 7.

[2] We interpret the provisions of section 7 relating to the clear proceeds from penalties, forfeitures and fines as identifying two

distinct funds for the public schools. These are (1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws. In the second category, it is quite apparent from the words of section 7 that the clear proceeds of all fines collected for the violation of the criminal laws are to be used for school purposes. One could not legitimately argue that the violation of a criminal law is not a "breach of the penal laws." While its intent as to the first category is less obvious, the wording of the entire section 7 makes its meaning clear. The term "penal laws," as used in the context of article IX, section 7, means laws that impose a monetary payment for their violation. The payment is punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party. *See* D. Lawrence, *Fines, Penalties, and Forfeitures: An Historical and Comparative Analysis*, 65 N.C.L. Rev. 49, 82 (1986). Thus, in the first category, the monetary payments are penal in nature and accrue to the state regardless of whether the legislation labels the payment a penalty, forfeiture or fine or whether the proceeding is civil or criminal.

Applying this reasoning to the bond at issue here, it is clear that the superior court judge set the bond to ensure the husband's appearance. The punishment for his failure to so appear would be immediate forfeiture of the bond. The terms of the bond specifically made its proceeds payable to the State of North Carolina should it be forfeited. The bond therefore falls within the parameters of the first category.

The wife cites *Katzenstein v. R.R. Co.*, 84 N.C. 688 (1881), for the proposition that the framers of the North Carolina Constitution did not intend to award penalties and forfeitures arising out of civil matters to the county school fund, thus ignoring the damages of aggrieved individuals. However, in *Katzenstein* this Court distinguished between "those penalties that accrue to the state, and those that are given to the person aggrieved, or such as may sue for the same." *Id.* at 693.

*Katzenstein* was a civil case, yet the statutory penalty involved was recoverable by the state under the mandate of section

7. *See also In re Wiggins*, 171 N.C. 372, 88 S.E. 508 (1916); *Hodge v. Railroad*, 108 N.C. 24, 12 S.E. 1041 (1891). The cases upon which the wife relies are inapposite. In *McGowan v. The Railroad*, 95 N.C. 418 (1886), a statute fixed five days as a reasonable time for forward transportation by a common carrier. The penalty was obviously designed to compensate the individual party for the loss he incurred when his perishable goods were left in the carrier's warehouse. Similarly, in *Williams v. Hodges*, 101 N.C. 300, 7 S.E. 786 (1888), a register of deeds issued a marriage license enabling the underage daughter of the plaintiff to marry without her father's consent. There, the statute specifically made the penalty payable to "any person who shall sue for the same." *See also Cole v. Laws*, 104 N.C. 651, 10 S.E. 172 (1889). As we stated above, the distinction lies in the nature of the penalty or forfeiture, i.e., whether it was designed to penalize the wrongdoer or to compensate a particular party.

[3] Finally, the wife points out that under N.C.G.S. § 50-13.2(c) the court has authority in a civil custody action to require the posting of a bond to ensure the return of a child to the court's jurisdiction. She argues that the superior court judge imposed this type of bond in the husband's habeas corpus proceeding. Because we find that the bond at issue here was an appearance bond intended to guarantee the appearance of the husband, this argument is without merit.

The bond set by the superior court in this civil case was an appearance bond designed to guarantee the husband's appearance before the court and as a penalty in the event of his failure to appear as ordered. Under article IX, section 7 of our constitution, the appellant Board of Education is entitled to the clear proceeds of the forfeiture in question. The Court of Appeals' decision is therefore

Reversed.

Justice FRYE dissenting.

The majority reverses the decision of the Court of Appeals which upheld the district court's order distributing proceeds of the forfeited bonds to the child's mother.

I find the reasoning of the majority totally unpersuasive. The clear purpose of the proceeding was to enforce the custody decree by getting the child out of Kuwait and back to Greensboro so that the mother could retain custody. Judge Williams entered a show-cause order directing the husband to appear on a day certain *with the minor child*. He also found the husband in contempt and ordered him held in custody until he purged himself of contempt by "sending for the minor child . . . and bringing her to this Court." In the superior court, Judge Beaty set bond and ordered the husband to appear before the district court *with the minor child*. How the majority can then conclude that "the record demonstrates that the judges who heard various aspects of this case were primarily concerned with the husband's attendance in court" is completely baffling to me. It seems obvious that the husband's attendance in court was secondary to the primary purpose of the enforcement orders, that is, to secure the presence of the child.

The majority notes that the bonds actually signed by the husband were entitled "Appearance Bond" and contained the usual language for such bonds. While this language might be crucial if we were interpreting a question of the surety's liability on the bonds, that is not the question before the Court. The only question is who gets the proceeds of the bonds once those proceeds are paid into court. The answer should depend, not upon which form some clerk or magistrate had the surety sign, but rather upon the purpose of the bond, as shown by the nature of the proceeding and the orders of the court pursuant to which the bonds were given.

The nature of this proceeding is not an ordinary civil proceeding, and certainly not a criminal action. It is a custody proceeding, to enforce compliance with a previous decree awarding custody of the child to the mother. Her husband had taken the child out of the country and refused to return the child to her. The court orders pursuant to which the bonds were given clearly required the husband to appear *with the child*. Thus they were compliance bonds and not ordinary civil or criminal bonds.

When compliance bonds are forfeited, the proceeds are paid to the injured party. *See, e.g.,* N.C.G.S. § 1-478 (1983) (claim and delivery statute where failure to return property results in for-

feiture of bond proceeds to injured party with recovery limited to value of property plus damages and costs incurred); N.C.G.S. § 1A-1, Rule 65(e) (1983) (injunction statute where the injured party may recover bond proceeds from party obtaining the temporary injunction when this latter party does not prevail in the subsequent action). Here the mother is clearly the injured party, having been completely frustrated in her efforts to secure compliance with the court orders giving her physical custody of the child. These orders were also consistent with the policy of this State which permits a court to require the posting of a bond to ensure the return of a child to the court's jurisdiction. N.C.G.S. § 50-13.2(c) (1987). The decision of the majority is contrary to this policy and represents a triumph of form over substance. Accordingly, I dissent.

Chief Justice EXUM joins in this dissenting opinion.