THE STATE OF NORTH CAROLINA EX REL. LACY H. THORNBURG, ATTORNEY GENERAL v. CURRENCY IN THE AMOUNT OF $52,029.00 IN U.S. CURRENCY; ONE (1) 1976 FOUR DOOR CADILLAC SEVILLE AUTOMOBILE, VEHICLE IDENTIFICATION NUMBER 6S69R6Q498436; ONE (1) SMITH & WESSON 44 MAGNUM PISTOL, MODEL 29-3, SERIAL NUMBER LB5425; AND ONE (1) ACTION ARMS UZI TYPE ASSAULT GUN, SERIAL NUMBER SA40430

No. 7PA88

(Filed 5 April 1989)

**1. Narcotics § 6; Penalties § 1— forfeiture provisions of Controlled Substances Act—precedence over RICO Act**

The criminal forfeiture provisions of the Controlled Substances Act take precedence over the civil forfeiture provisions of the RICO Act where the possessor of the items seized and subject to forfeiture has been validly indicted and awaits criminal trial under the Controlled Substances Act. N.C.G.S. § 75D-5(a), (c) and (d); N.C.G.S. § 75D-10; N.C.G.S. § 90-112.

**2. Narcotics § 6; Penalties § 1— forfeiture in narcotics case—county school fund**

Any judgment of property forfeiture entered against a defendant as a result of convictions on criminal charges against him pursuant to the Controlled Substances Act will accrue to the State and thus to the appropriate county school fund. Art. IX, § 7 of the N. C. Constitution; N.C.G.S. § 90-112(1); N.C.G.S. § 115C-437.

**3. Appeal and Error § 36.2— service of case on appeal—ex parte extension of time**

The trial judge did not err in extending *ex parte* the time for the State to serve the record on appeal in an action involving a forfeiture where counsel for the State miscalculated the initial filing date, the State complied with Appellate Rule 27(c)(1) by giving oral and written notice of its motion to extend time to serve the proposed record on appeal, and the trial judge complied with the requirement of Rule 27(c)(1) that all other parties have an opportunity to be heard by considering motions filed by appellees to dismiss the appeal and letters of the appellees filed in response to the State's motion.

4. **Appeal and Error § 36.1— belated service of case on appeal—good cause for denial of motion to dismiss**

Good cause was shown for the trial court's denial of appellees' Rule 25 motion to dismiss the appeal for failure of appellant to serve the case on appeal within the time allowed where the record on appeal consisted of all the papers already on file with the clerk of court and the uncontested hearing transcript, no testimony was narrated and no exhibits were included in the proposed record on appeal, and the case presented no factual dispute and only two questions of law. Appellate Rule 25.

APPEAL by the State pursuant to N.C.G.S. § 7A-31 from a judgment entered by *Battle, J.*, at the 8 June 1987 Regular Civil Non-jury Session of ALAMANCE County Superior Court. Heard in the Supreme Court 14 September 1988.

*Lacy H. Thornburg, Attorney General, by Jean A. Benoy, Senior Deputy Attorney General, and Charles M. Hensey, Special Deputy Attorney General, for the State-appellant.*

*Ridge & Associates, by Paul H. Ridge and David K. Holley, for intervenor-appellee Alamance County Board of Education; and Allen & Walker, by Louis C. Allen, Jr., for intervenor-appellee Burlington City Board of Education.*

*Lacy H. Thornburg, Attorney General, by Harold M. White, Jr., Assistant Attorney General, Office of Special Litigation, amicus curiae.*

MEYER, Justice.

In this case, we consider whether the criminal forfeiture provisions of the Controlled Substances Act take precedence over the civil forfeiture provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO) where the possessor of the items seized and subject to forfeiture has been validly indicted and awaits criminal trial under the Controlled Substances Act. Limiting our decision to the specific fact situation presented here, we conclude that the forfeiture provisions of the Controlled Substances Act prevail. We also consider whether Judges Battle and Brewer respectively erred in extending the time for serving the proposed record on appeal *ex parte* and in denying the intervenors' motion to dismiss this appeal. We conclude that the trial judges did not err.

State ex rel. Thornburg v. Currency

On 11 December 1986, the male occupant of a room at the Econo Lodge Motel in Graham, North Carolina, had failed to check out in timely manner. The motel manager, who had tried unsuccessfully to rouse the occupant by telephone, used his master key to gain access to the room. He observed the sleeping occupant on one bed and a handgun on the other bed. The manager called the Graham Police Department. As the three officers who responded to the call passed the window of the occupied room, one of them observed drug paraphernalia in plain view. The officers entered the room, awakened the occupant, arrested and handcuffed him and advised him of his constitutional rights. The officers then searched the room, discovering among other things, $52,029 in United States currency, a Smith and Wesson magnum .44-caliber pistol, an Action Arms "UZI" type assault machine gun, and 105 grams of cocaine. The occupant identified as his a Cadillac automobile with a Nevada license tag parked in the motel lot. He had a driver's license in the name of Michael Lawrence Short, but he was later identified as Larry Wendle Parham. Parham admitted owning the $52,029, which he described as the proceeds from a drug sale. He told the officers that he traveled between Florida and Graham, North Carolina, on a weekly basis, picking up cocaine in Florida and selling it in North Carolina. Parham was subsequently charged with one count of felony trafficking by possession of cocaine (level one), one count of felony trafficking by possession of cocaine (level three), and one count of maintaining a vehicle for transporting controlled substances.

On 23 December 1986, the State of North Carolina, on the relation of Lacy H. Thornburg, Attorney General, filed a document entitled "Complaint *In Rem* RICO Forfeiture Proceeding," pursuant to N.C.G.S. § 75D-5(a), which named as defendants the $52,029, the Cadillac automobile, the pistol and the assault gun. A copy of the complaint was served on Larry Parham the same day. Parham never filed answer or otherwise appeared. On 19 January 1987, an order of seizure was entered under the RICO Act directing the Sheriff of Alamance County to seize, attach and keep the currency, automobile and guns in a safe place. On 21 January 1987, 4 May 1987, and 6 May 1987, orders were entered respectively allowing the City of Graham, the Alamance County Board of Education and the Burlington City Board of Education (school boards) to intervene and file answer. In its answer, the City of

Graham asked that the proceeds of the seized property, when forfeited, be paid to its Police Department pursuant to the RICO Act. In their answers, the two school boards demanded the proceeds be paid to the school fund of Alamance County pursuant to article IX, section 7 of the North Carolina Constitution, which provides in part that the clear proceeds of all penalties and forfeitures collected for any breach of the penal laws shall be used for maintaining the public schools.

On 8 June 1987, the case was heard for entry of final judgment of forfeiture. Upon completion of the State's evidentiary showing, the trial judge considered trial briefs and oral argument presented by all parties. The trial judge made findings of fact and concluded as a matter of law

(1) That the property described in the complaint is subject to forfeiture under Chapter 75D of the North Carolina General Statutes.

(2) That it appears to the Court that the property . . . is subject to forfeiture under the North Carolina Controlled Substances Act, upon a final conviction of the said Larry Parham in the cases now pending in Alamance County Superior Court against said defendant.

(3) That the amount of the forfeiture pursuant to Chapter 75D of the General Statutes cannot be determined in this action until the criminal actions pending against Larry Parham are completed and any forfeitures ordered under the Controlled Substances Act shall have taken place.

(4) That the provisions of Chapter 75D of the General Statutes are secondary to the criminal forfeiture provision of the Controlled Substances Act, North Carolina General Statutes Section 90-112, which applies to these properties.

(5) The Court concludes as a matter of law that any property received at the appropriate time by and forfeited to the State Treasurer under General Statutes Chapter 75D must thereafter be passed on by the State Treasurer to the treasurer or proper officer authorized to receive fines and forfeitures to be used for the school fund of Alamance County in accordance with the provisions of North Carolina Constitution Article IX, Section 7.

After the entry of an order pursuant to these findings, the Burlington City Board of Education filed a motion for forfeiture pursuant to the Controlled Substances Act in the three criminal cases pending against Larry Parham. The State and the City of Graham gave notice of appeal. On 9 March 1988, this Court allowed the State's petition for discretionary review prior to determination by the Court of Appeals.

I.

The Racketeer Influenced and Corrupt Organizations Act, codified at N.C.G.S. ch. 75D, became effective 1 October 1986 and will expire 1 October 1989. 1985 N.C. Sess. Laws ch. 999 § 3. "Racketeering activity" is defined in part as follows:

[T]o commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent under the following laws of this State:

a. Article 5 of Chapter 90 of the General Statutes of North Carolina relating to controlled substances and counterfeit controlled substances.

N.C.G.S. § 75D-3(c)(1) (1987). Under the section entitled "Prohibited activities":

(a) No person shall:

(1) engage in a pattern of racketeering activity or, through a pattern of racketeering activities or through proceeds derived therefrom, acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money; or

(2) conduct or participate in, directly or indirectly, any enterprise through a pattern of racketeering activity whether indirectly, or employed by or associated with such enterprise; or

(3) conspire with another or attempt to violate any of the provisions of subdivision (1) or (2) of this subsection.

N.C.G.S. § 75D-4(a) (1987).

A RICO forfeiture proceeding is a civil *in rem* proceeding against property, which is instituted by complaint and prosecuted only by the Attorney General of North Carolina or his designated representative. N.C.G.S. § 75D-5(c), (d) (1987). Section 75D-5(a) provides:

All property of every kind used or intended for use in the course of, derived from, or realized through a racketeering activity or pattern of racketeering activity is subject to forfeiture *to the State.*

N.C.G.S. § 75D-5 (a) (1987) (emphasis added). The statute specifically provides:

Civil remedies under this Chapter are *cumulative, supplemental and not exclusive,* and are *in addition* to the fines, penalties and forfeitures set forth in a final judgment of conviction of a violation of the criminal laws of this State as punishment for violation of the penal laws of this State.

N.C.G.S. § 75D-10 (1987) (emphasis added).

The Controlled Substances Act is codified in chapter 90, article 5 of the North Carolina General Statutes. Criminal violations of the Act and the penalties therefor are set out in section 90-95. N.C.G.S. § 90-95 (1985). Under section 90-112(a), the following property is subject to forfeiture:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of the provisions of this Article;

(2) All money, raw material, products, and equipment of any kind which are acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance in violation of the provisions of this Article;

(3) All property which is used, or intended for use, as a container for property described in subdivisions (1) and (2);

(4) All conveyances, including vehicles, vessels, or aircraft, which are used or intended for use to unlawfully conceal, convey, or transport, or in any manner to facilitate the

unlawful concealment, conveyance, or transportation of property described in (1) or (2) . . . ;

. . . .

(5) All books, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this Article.

N.C.G.S. § 90-112 (1985). Property taken or detained under this section is not repleviable, but is deemed to be in the custody of the law enforcement agency seizing it. N.C.G.S. § 90-112(c) (1985). Under subsection (d), the law enforcement agency is provided with several options in dealing with the forfeited property, depending on its nature. N.C.G.S. § 90-112(d)(1) to (4) (1985).

The State vigorously argues that the legislative intent behind passage of the RICO Act was to provide for a fast, effective *civil* method of separating persons engaged in racketeering from the instrumentalities used in such activities as well as any gains derived therefrom. Indeed, the RICO forfeiture provisions are preceded by a legislative statement that

the purpose and intent of this Chapter is: to deter organized unlawful activity by imposing civil equitable sanctions against th[e] subversion of the economy by organized unlawful elements; to prevent the unjust enrichment of those engaged in organized unlawful activity; [and] to restore the general economy of the State . . . .

N.C.G.S. § 75D-2(b) (1987). The State contends that because forfeitures under the RICO Act are, in effect, restitution to law enforcement agencies, the property forfeited under the Act is not subject to article IX, section 7 of our Constitution. Section 7 provides in part that

the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7 (1984).

We express no opinion as to the State's contention that RICO forfeitures are in the nature of restitution or as to the constitutional validity of the RICO forfeiture provisions. However, we recently addressed the reach of article IX, section 7. *Mussallam v. Mussallam*, 321 N.C. 504, 364 S.E. 2d 364 (1988). There, the wife argued that the proceeds from a forfeited appearance bond from her husband, which guaranteed that their child would be produced for a custody hearing, belonged to her rather than to the county school fund, because the bond was civil in nature. We acknowledged that we were dealing with a civil case, but we declined to interpret article IX, section 7 to mean that the clear proceeds of penalties, forfeitures and fines go to the school fund only if they arise from criminal cases. *Id.* at 508, 364 S.E. 2d at 366. We stated:

> We interpret the provisions of section 7 relating to the clear proceeds from penalties, forfeitures and fines as identifying two distinct funds for the public schools. These are (1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws. In the second category, it is quite apparent from the words of section 7 that the clear proceeds of all fines collected for the violation of the criminal laws are to be used for school purposes. . . . While its intent as to the first category is less obvious, the wording of the entire section 7 makes its meaning clear. The term "penal laws," as used in the context of article IX, section 7, means laws that impose a monetary payment for their violation. The payment is punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party. *See* D. Lawrence, *Fines, Penalties, and Forfeitures: An Historical and Comparative Analysis*, 65 N.C.L. Rev. 49, 82 (1986).

*Id.* at 508-09, 364 S.E. 2d at 366-67. In *Mussallam*, the appearance bond was penal in nature, even though it was designated as a civil bond. We held that it is the *nature* rather than the *form* of the instrument that governs, however it may be labeled.

Whatever the merits of the State's argument concerning the intent of the RICO Act, on which we do not pass, the specific lan-

guage in N.C.G.S. § 75D-10 and the particular circumstances of the case sub judice compel this Court to conclude that the forfeiture provisions of the Controlled Substances Act prevail over those of the RICO Act. The property discovered during the search of Larry Parham's motel room and the automobile were seized under authority of the Controlled Substances Act. N.C.G.S. ch. 90, art. 5 (1985). The criminal charges pending against Larry Parham at the time of this RICO forfeiture proceeding were also brought under authority of the Controlled Substances Act. The City of Graham Police Department and the Alamance County and Burlington City Boards of Education both lay claim to the property seized from Larry Parham. Resolution of these conflicting claims lies in the statutory language of both the Controlled Substances Act and the RICO Act.

[1] Chapter 90 provides for forfeiture of property involved in violations of the Controlled Substances Act. As outlined above, section 75D-10 provides that the civil remedies under RICO are *cumulative, supplemental and not exclusive.* The RICO forfeiture provisions are *in addition to* the fines, penalties and forfeitures set forth in a final *criminal* conviction. N.C.G.S. § 75D-10 (1987). "Cumulative" and "supplemental" both mean "additional." The Random House Dictionary of the English Language, 489, 1912 (2d ed. 1987). "Not exclusive" means "not limited to." *Id.* at 675. Statutory language should be given its plain meaning wherever possible. *Utilities Comm. v. Edmisten, Atty. General,* 291 N.C. 451, 232 S.E. 2d 184 (1977). Construing the two statutes *in pari materia, Shaw v. Baxley,* 270 N.C. 740, 155 S.E. 2d 256 (1967), we read the "in addition to" language in N.C.G.S. § 75D-10 to mean that the forfeiture provisions of the RICO Act do not prevent forfeiture under other applicable statutory forfeiture provisions. Therefore, where, as here, the owner of the forfeitable property has been indicted and is awaiting trial on *criminal* charges under the Controlled Substances Act, we hold that the forfeiture provisions of that Act take precedence over the RICO Act forfeiture provisions.

[2] Having decided that the forfeiture provisions of the Controlled Substances Act prevail here, we note that any judgment of property forfeiture which may be entered against Larry Parham as a result of convictions on the criminal charges against him pursuant to the Controlled Substances Act will accrue to the

State and thus to the appropriate county school fund. The statute specifically provides that:

> Notwithstanding the provisions of subsection (d), the law-enforcement agency having custody of money that is forfeited pursuant to this section *shall pay it to the treasurer or proper officer authorized to receive fines and forfeitures to be used for the school fund of the county in which the money was seized.*

N.C.G.S. § 90-112(d1) (1985) (emphasis added). Moreover, N.C.G.S. § 115C-437, which implements article IX, section 7 of our state Constitution, provides for allocation of revenues to the local school administrative unit by the county.

> The clear proceeds of all penalties and forfeitures and of all fines collected for any breach of the penal laws of the State, as referred to in Article IX, Sec. 7 of the Constitution, shall include the full amount of all penalties, forfeitures or fines collected under authority conferred by the State, diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.

N.C.G.S. § 115C-437 (1987). In light of our conclusion that the forfeiture provisions of the Controlled Substances Act prevail over those of the RICO Act under the particular facts of this case, and in light of the constitutional mandate in article IX, section 7 and the statutory provisions of N.C.G.S. § 115C-437 and N.C.G.S. § 90-112(d1), we hold that the trial court did not err in entering its order pursuant to its findings that the amount of the forfeiture could not be determined until the criminal actions pending against Larry Parham were completed and any forfeitures under the Controlled Substances Act had taken place.

II.

[3] We now turn to the school boards' contention that Judge Battle committed reversible error in extending *ex parte* the time for the State to serve the record on appeal and that Judge Brewer erred in denying the school boards' motion to dismiss the appeal.

This case was heard on 8 June 1987. On the same day, the trial court announced its ruling in open court and the State and

the City of Graham gave notice of appeal. The judgment was signed on 23 June 1987. The appeal entries attached to the judgment allowed the appellants 90 days to serve the record on appeal, so that the due date was 7 September 1987. On 4 September 1987, the time allowed for serving the record on appeal was enlarged to 120 days by consent, so that the new due date was 7 October 1987.

Counsel for the State counted the number of days from the day the judgment was signed, 23 June 1987, rather than from the day the trial judge announced his decision, 8 June 1987. Counsel for the State served the proposed record on appeal on 22 October 1987, the 120th day from 23 June 1987. After speaking to opposing counsel on the telephone, he also served them with a copy of a written motion to extend time to serve the proposed record on appeal. Simultaneously, the school boards filed a written motion to dismiss the appeal.[1] Without counsel for the school boards present, Judge Battle considered all the papers filed and extended the time for serving the proposed record on appeal to 22 October 1987, the day of its actual filing. Judge Brewer later denied the school boards' motion to dismiss the appeal. The school boards now contend that Judge Battle's *ex parte* order was entered contrary to the provisions of Rule 27(c)(1) of the North Carolina Rules of Appellate Procedure. We disagree.

The proceedings from the time of giving notice of appeal to the filing of the settled record on appeal are governed by the North Carolina Rules of Appellate Procedure. Rule 11 sets out the times and procedures to be followed. N.C.R. App. P. 11. Rule 11(e) provides that the times for taking any action may be extended in accordance with the provisions of Rule 27(c). Rule 27(c)(1), "Motions for Extension of Time in the Trial Division," provides in pertinent part:

> Motions for extension of time . . . may be made orally or in writing and without notice to other parties . . . ; provided that motions to extend the time for serving the proposed record on appeal made after the expiration of any time previous-

---

1. The Burlington City Board of Education did not file its motion to dismiss the appeal until 5 November 1987 but therein adopted the reasons for dismissal presented by the Alamance County Board of Education.

ly allowed for such service must be *in writing and with notice to all other parties and may be allowed only after all other parties have had opportunity to be heard.* Such motions may be determined ex parte, but the moving party shall promptly serve on all other parties to the appeal a copy of any order extending time.

N.C.R. App. P. 27(c)(1) (emphasis added). The State complied with the emphasized portion of Rule 27(c)(1) by giving oral and written notice of its motion to extend time to serve the proposed record on appeal. The trial judge complied with the emphasized portion of Rule 27(c)(1) by considering the motions filed by both parties and the letters of the school boards filed in response to the State's motion, prior to entering the order on 26 October 1987, extending time in which to serve the proposed record on appeal. Although counsel for the State erred in calculating the initial filing date, we conclude that Judge Battle properly entered his *ex parte* order extending the time for serving the proposed record on appeal.

We note that the State also complied with the time limits specified in Rule 12(a) of the Rules of Appellate Procedure. That rule provides:

> (a) *Time for Filing Record on Appeal.* Within 15 days after the record on appeal has been settled by any of the procedures provided in this Rule 11 or Rule 18, but no later than 150 days after giving notice of appeal, the appellant shall file the record on appeal with the clerk of the court to which appeal is taken.

N.C.R. App. P. 12(a) (emphasis added). On 4 November 1987, counsel for the State made a motion to the Court of Appeals to extend time to file the record on appeal. Pursuant to Rule 27(c)(2) of the Rules of Appellate Procedure, an order issued from that court on 18 November 1987 extending the time for filing to 14 December 1987. On 3 December 1987, the settled record on appeal was served on the school boards. On 10 December the settled record on appeal was filed and docketed in the Court of Appeals. The State therefore complied with the initial fifteen-day time limit specified in Rule 12(a). Further, a simple calculation demonstrates that the State also complied with the outside time limit of 150 days in which to file the settled record on appeal from the time of

oral notice of appeal. The trial judge announced his decision in the RICO proceeding on 8 June 1987. One hundred fifty days from 8 June 1987 brings the time limit under Rule 12(a) to 5 November 1987. However, the State filed its motion to extend time to file the record on appeal with the Court of Appeals on 4 November 1987. As outlined above, the motion was granted and the time for filing the settled Record was extended to 14 December 1987. Since the State filed the settled record on appeal with the Court of Appeals on 10 December 1987, such filing complied with the 150-day time limit specified in Rule 12(a).

[4] The school boards further contend that Judge Brewer's order denying their motion to dismiss under Rule 25 was deficient because it did not disclose the basis for denial and did not purport to be based on a showing of good cause by the State. We disagree.

Rule 25 governs dismissal of an appeal for failure to comply with the Rules of Appellate Procedure. The rule provides in pertinent part:

> If after giving notice of appeal from any Court . . . the appellant shall fail within the times allowed by these rules or by order of court to take any action required to present the appeal for decision, the appeal may on motion of any other party be dismissed. . . . Motions to dismiss . . . shall be allowed . . . *unless the court for good cause shall permit the action to be taken out of time.*

N.C.R. App. P. 25 (emphasis added). In his order denying the school boards' motion to dismiss the appeal, Judge Brewer stated that he had heard the arguments of counsel and had considered the material in the file of the case.

The proposed record on appeal consisted of all the papers already on file with the Clerk of Superior Court, Alamance County, together with the hearing transcript, which transcript the school boards did not contest. No testimony was narrated, and no exhibits were included in the proposed record on appeal. The case presented no factual dispute and only two questions of law. Since all other documents in the case were filed and uncontested, we conclude that sufficient good cause was shown to allow this ap-

peal to proceed. Judge Brewer therefore properly denied the school boards' motion to dismiss the appeal.

In summary, we hold that under the particular fact situation presented in this case, the forfeiture provisions of the Controlled Substances Act prevail over the forfeiture provisions of the RICO Act. The State's motion to extend time to serve the proposed record on appeal was properly granted, and the school boards' motion to dismiss the appeal was properly denied.

Affirmed.