902 F.2d 267
 60 Ed. Law Rep. 391
 UNITED STATES of America; Winston-Salem Police Department,
Plaintiffs-Appellees,
v.
WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDUCATION, Defendant-Appellant,
and
Robert Alston, Jr., Defendant,
Attorney General of North Carolina, Amicus Curiae.
 No. 89-7664.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 12, 1990.
Decided May 4, 1990.
 
 Douglas S. Punger, Winston-Salem, N.C., for defendant-appellant.
 Richard Lee Robertson, Asst. U.S. Atty., Greensboro, N.C., for plaintiffs-appellees.
 Harold Mitchell White, Jr., Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for Amicus Curiae.
 Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., Mary Claire McNaught, Public Safety Atty., Winston-Salem Police Dept., Winston-Salem, N.C., on the brief, for plaintiffs-appellees.
 Lacy H. Thornburg, Atty. Gen., Raleigh, N.C., on the brief, for Amicus Curiae.
 Before CHAPMAN and WILKINS, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 WILKINS, Circuit Judge:
 The district court granted summary judgment for the United States and the Winston-Salem Police Department (Police Department) in an action in which they sought a declaration that the Police Department could retain an amount of money that had been forfeited pursuant to 21 U.S.C.A. Sec. 881 (West 1981 & Supp.1990) and 19 U.S.C.A. Sec. 1609 (West Supp.1990) and transferred from the United States Department of Justice to the Police Department pursuant to 21 U.S.C.A. Sec. 881(e)(1)(A) (West Supp.1990) and 19 U.S.C.A. Sec. 1616a(c)(1)(B)(ii) (West Supp.1990). 717 F.Supp. 378. The Winston-Salem/Forsyth County Board of Education (Board) appeals. We affirm.
 I.
 The pertinent facts are undisputed. Pursuant to a search warrant Winston-Salem police officers searched a residence on February 4, 1987, recovering weapons, 20 plastic bags of cocaine, and $10,638 in cash. Robert Alston, Jr. was arrested and charged with violating two provisions of the North Carolina Controlled Substances Act, N.C.Gen.Stat. Secs. 90-86 et seq. (1985 & Supp.1989) (North Carolina Act): (1) possession of cocaine with the intent to sell or deliver it and (2) intentionally maintaining a building to keep or sell controlled substances. N.C.Gen.Stat. Secs. 90-95(a)(1), 90-108(a)(7) (1985). Subsequently, the state prosecution of Alston was voluntarily dismissed on April 15, 1987. On April 23, 1987, the state district court ordered the Police Department to return the seized cash to Alston. Notice of this order was not delivered to the Police Department and consequently there was no compliance.
 At the request of the Police Department, Drug Enforcement Administration (DEA) officials adopted the seizure of the cash on February 10, 1987.[1] The cash was subsequently transferred to DEA[2] which initiated administrative forfeiture proceedings. On March 3, 1987, the Police Department filed a request with DEA seeking equitable distribution of 85 percent of the forfeited cash pursuant to 21 U.S.C.A. Sec. 881(e)(1)(A) and 19 U.S.C.A. Sec. 1616a(c)(1)(B)(ii). Having complied with all applicable statutes and regulations, DEA declared the cash forfeited to the United States on April 24, 1987. Honoring the request of the Police Department for an equitable distribution, the Justice Department transferred $9,016.80 to the Police Department on May 20, 1987.
 
 
 1
 State charges were reinstated and Alston was subsequently indicted and convicted. Following Alston's conviction, the state superior court ordered the Police Department to return the seized cash to Alston because the state prosecutor failed to demonstrate that the cash was subject to forfeiture under North Carolina law. As with the April 23, 1987, order of the state district court, this order was neither served upon nor carried out by the Police Department. When the state prosecutor moved to rescind this order, the state court ordered the Police Department to forward the cash to the court to be held pending further proceedings. The Police Department complied with this order under protest.
 
 
 2
 In the subsequent declaratory judgment action, the district court granted summary judgment for the United States and the Police Department. The court held that the state court did not have jurisdiction over the forfeited cash and found no conflict between federal and state law pertaining to the disposition of the forfeited cash. The court ruled that the decision of the United States Attorney General not to discontinue federal forfeiture proceedings in favor of state proceedings was not an abuse of discretion. Finally, the district court held that 19 U.S.C.A. Sec. 1616a(c) only requires a direct participation between federal and local law enforcement agencies either in the seizure or in the forfeiture of property before the local agency may request DEA to adopt a seizure.
 
 II.
 
 3
 The issues involve the equitable sharing provisions of sections 881(e)(1)(A) and 1616a(c) and provisions of the North Carolina Constitution and the North Carolina Act. Section 881(e)(1)(A) provides:
 
 
 4
 Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may ... retain the property for official use or, in the manner provided with respect to transfers under section 1616a of Title 19, transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property.
 
 
 5
 21 U.S.C.A. Sec. 881(e)(1)(A).[3] Under 19 U.S.C.A. Sec. 1616a(c)(1)(B)(ii) the Secretary of the Treasury may "[t]ransfer any of the [forfeited] property to ... any State or local law enforcement agency that participated directly or indirectly in the seizure or forfeiture of the property." The North Carolina Constitution provides that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools." N.C. Const. art. IX, Sec. 7. The forfeiture provision of the North Carolina Act provides that "the law-enforcement agency having custody of money that is forfeited pursuant to this section shall pay it to the treasurer or proper officer authorized to receive fines and forfeitures to be used for the school fund of the county in which the money was seized." N.C.Gen.Stat. Sec. 90-112(d1). Thus, the ultimate issue is whether the Board is entitled to forfeited cash transferred to the Police Department under the federal equitable sharing provisions.
 
 III.
 
 6
 The district court concluded that the state court was without jurisdiction to issue orders concerning the disposition of the cash because the federal government "had won the unseemly race to the res." The district court reasoned that when DEA adopted the seizure, the cash was deemed to have been seized by the federal government on the date of the seizure by the Police Department. The district court then noted that under 28 U.S.C.A. Sec. 1355 (West Supp.1990), federal courts have exclusive, original jurisdiction over forfeitures under federal law.[4]
 
 
 7
 The Board contends that a state forfeiture proceeding under the North Carolina Act, N.C.Gen.Stat. Sec. 90-112, automatically begins at the moment of seizure. Under this theory, the Board reasons that because state law enforcement officials first seized the cash, the district court was required to yield to the prior jurisdiction of the state court. See Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). In Penn General the Supreme Court held that where two actions are in rem or quasi in rem, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." Id. at 195, 55 S.Ct. at 389. Therefore, for the state court to have exclusive jurisdiction over the cash under Penn General, the state forfeiture proceeding must have been initiated prior to the federal forfeiture proceeding and both the state and federal forfeiture proceedings must have been in rem.
 
 
 8
 We believe that a state forfeiture proceeding under section 90-112 of the North Carolina Act is criminal in nature and is an in personam proceeding. See State ex rel. Thornburg v. Currency in the amount of $52,029.00, 324 N.C. 276, 378 S.E.2d 1 (1989) (distinguishing civil in rem forfeiture under state RICO act from criminal forfeiture under section 90-112). This is consistent with the traditional rule that unless otherwise provided, criminal forfeitures are in personam, not in rem, proceedings. See United States v. Bissell, 866 F.2d 1343, 1348 n. 3 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 146, 107 L.Ed.2d 104, --- U.S. ----, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989); United States v. Moya-Gomez, 860 F.2d 706, 721 n. 15 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); United States v. Kingsley, 851 F.2d 16, 18 n. 2 (1st Cir.1988). Federal forfeitures under section 881 are civil in nature and are in rem proceedings. United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1145 (9th Cir.1989). Thus, because there were not competing in rem proceedings, Penn General does not require that the jurisdiction of the district court give way to that of the state court. In an attempt to convince us that the state court had exclusive jurisdiction the Board relies on the cases of One 1985 Cadillac Seville and $79,123.49 in United States Cash and Currency. However, these cases involve state forfeiture proceedings brought pursuant to state statutes that explicitly provided that the state proceedings were in rem. See One 1985 Cadillac Seville, 866 F.2d at 1145; $79,123.49 in United States Cash and Currency, 830 F.2d at 97. Thus, we conclude that the state court did not have jurisdiction to the exclusion of the federal district court.[5]
 
 IV.
 
 9
 The Board next contends that when property is subject to forfeiture under state law, the practice of allowing federal officials to adopt seizures made by local law enforcement officials and federally forfeiting the property violates 21 U.S.C.A. Sec. 903 (West 1981). Section 903 provides:
 
 
 10
 No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.
 
 
 11
 The Board argues that section 90-112 of the North Carolina Act and 21 U.S.C.A. Sec. 881 were enacted for the same purpose and occupy the same field, and thus, section 903 requires the federal forfeiture proceeding to give way to a state forfeiture proceeding. A major flaw in the Board's argument is that there was no state forfeiture proceeding resulting from Alston's violation of the North Carolina Act. In fact, the state court ordered the Police Department to return the cash to Alston after his conviction. There was, however, a federal proceeding in which the cash was administratively forfeited because probable cause existed to believe that the cash was used in violation of federal law.[6] And, as earlier noted, when cash is administratively forfeited in a federal proceeding, it may be equitably shared with local law enforcement agencies pursuant to 21 U.S.C.A. Sec. 881(e)(1)(A) and 19 U.S.C.A. Sec. 1616a(c).
 
 
 12
 The Board also contends that when read in conjunction with section 903, section 1616a, which provides for the transfer of forfeited property to state and local law enforcement agencies, indicates that Congress intended the federal government to dismiss or discontinue its proceedings in favor of state forfeiture proceedings. The Board bases this argument on the fact that when Congress enacted section 1616a to replace section 1616, the only substantive change was the rearrangement of paragraphs so that the first paragraph provides that a federal forfeiture proceeding may be discontinued or dismissed in favor of a state proceeding. The rearrangement of the paragraphs in section 1616a, however, does not override the plain language of this section which unambiguously provides that the United States Attorney General "may" discontinue forfeiture proceedings in favor of state proceedings. As the district court correctly concluded, the use of the word "may" makes the decision of whether to discontinue federal proceedings in favor of state proceedings discretionary, not mandatory. Since the state did not seek forfeiture of the cash, we are compelled to agree with the district court that in the absence of a competing state forfeiture proceeding, the Attorney General did not abuse his discretion by not discontinuing the federal forfeiture proceeding and by following the equitable sharing provisions of 21 U.S.C.A. Sec. 881(e)(1)(A) and 19 U.S.C.A. Sec. 1616a(c)(1)(B)(ii).
 
 V.
 
 13
 The Board also contends that North Carolina law was violated when the Police Department transferred the cash to DEA. Under North Carolina law, property seized by a law enforcement officer must be kept "under the direction of the court or magistrate as long as necessary to assure that the property will be produced at and may be used as evidence in any trial." N.C.Gen.Stat. Sec. 15-11.1(a) (1983). The Board argues that the Police Department had no authority to make the initial transfer of the seized cash to DEA. We need not address whether the Police Department violated section 15-11.1(a) because even assuming such a violation occurred, the United States may adopt a seizure even when the person who seized the property had no authority to do so. See United States v. One Ford Coupe Auto., 272 U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279 (1926); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 727 (4th Cir.1958). We agree with the district court that "it follows that the government may adopt a seizure where there was no authority to transfer the property."VI.
 
 
 14
 Finally, the Board contends that even if federal forfeiture was proper, any of the cash returned to the Police Department must be turned over to the Board. The Board argues that under article IX, section 7, of the North Carolina Constitution, all forfeitures received by the Police Department under the equitable sharing provisions of sections 881 and 1616a must be turned over to it. The North Carolina Supreme Court has stated that section 7 establishes two funds for public schools: "(1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws." Currency in the amount of $52,029.00, 324 N.C. at 283, 378 S.E.2d at 4 (quoting Mussallam v. Mussallam, 321 N.C. 504, 508-09, 364 S.E.2d 364, 366-67 (1988)). Relying on this construction of section 7, the Board contends that there is no authority for a local law enforcement agency to retain possession of forfeited property.[7]
 
 
 15
 By contrast, the North Carolina Attorney General contends that section 7 applies only to forfeitures that result from a breach of North Carolina penal law and not to forfeitures initiated by a federal agency because of a violation of federal law. See 47 Op.Att'y Gen. 1 (1988). We agree. In Currency in the amount of $52,029.00, the North Carolina Supreme Court, interpreting section 7, specifically used the language "so long as [the forfeitures] accrue to the state." And, the plain language of section 7 limits its application to forfeitures resulting from a "breach of the penal laws of the State" and section 90-112(d1) of the North Carolina Act refers only to forfeitures "pursuant to this section." The forfeiture here was initiated by federal authorities and arose from violations of federal law. Since the disposition of the forfeited cash is not controlled by section 7 of the North Carolina Constitution, the Police Department is not required to deliver it to the Board.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 DEA adopts seizures by state or local law enforcement officials when it takes custody of seized property and treats the property as if DEA had made the initial seizure. DEA may then institute forfeiture proceedings in accordance with federal law
 
 
 [2]
 The Police Department retained $30 of the cash as reimbursement for "buy money."
 
 
 [3]
 At the time of the events here, section 881(e)(1)(A) provided that the property could be retained or transferred to any federal, state, or local agency. An amendment in 1988 inserted the words "law enforcement" between "local" and "agency." See Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, Sec. 6077(b), 102 Stat. 4181, 4325 (1988). Congress denominated this amendment as technical and the result here is the same under either version
 
 
 [4]
 Because we conclude that the state court did not have exclusive jurisdiction, the exercise of jurisdiction by the federal district court was proper. Thus, we need not address the district court's conclusion that the state court was without jurisdiction to enter orders concerning the cash. We note, however, that the Seventh Circuit has indicated that the exclusive jurisdiction of federal courts over forfeitures pursuant to section 881 "hardly establishes that the state court lacked jurisdiction" where the state court was proceeding under a state forfeiture statute. United States v. $79,123.49 in United States Cash and Currency, 830 F.2d 94, 98 (7th Cir.1987). But see Michigan State Police v. 33rd Dist. Court, 138 Mich.App. 390, 360 N.W.2d 196 (1984) (where cash was properly subject to forfeiture action in federal court, state court was without jurisdiction to order disposition)
 
 
 [5]
 Because we conclude that a forfeiture proceeding under the North Carolina statute is in personam we need not address the Board's contention that the state forfeiture proceeding predated the federal forfeiture
 
 
 [6]
 To obtain a forfeiture under 21 U.S.C.A. Sec. 881 the government must establish " 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.' " Boas v. Smith, 786 F.2d 605, 609 (4th Cir.1986) (quoting United States v. $364,960 in United States Currency, 661 F.2d 319, 323 (5th Cir.1981))
 
 
 [7]
 The Board claims that local law enforcement officials have been using the equitable sharing provisions of federal law to circumvent the laws and Constitution of North Carolina. As the district court noted, section 881 was amended to be effective September 30, 1991 to provide that the Attorney General assure that property transferred under the equitable sharing provisions is not transferred so as to "circumvent any requirement of State law that prohibits forfeiture or limits use or disposition of property forfeited to State or local agencies." 21 U.S.C.A. Sec. 881(e)(3)(B) (West Supp.1990). We express no opinion as to the effect of this amendment on future cases involving equitable sharing of federal forfeitures with local law enforcement agencies in North Carolina