EMIL KATZENSTEIN v. RALEIGH & GASTON RAILROAD COMPANY.

*Agency—Action against Railroad Co. for Penalty for Failure to Forward Freight—Application of Penalty—Jurisdiction.*

1. In an action against a railroad company, where it was in evidence that S., the regular agent of the defendant at a certain depot, lived three miles from the depot and that T. lived at the depot for two years prior to the bringing of the action and discharged the duties of agent in receiving and forwarding freight, selling tickets, &c., all of which was done in the name of S. and with the knowledge and acquiescence of defendant; *It was held,* that T. was the agent of defendant and that defendant was bound by any act of his within the scope of the authority impliedly given.

2. The penalty against a railroad company for failure to forward freight under ch. 240, § 2, Laws 1874-5, is not given by article 9, § 5 of the constitution to the county school fund.

3. The said statute is not in violation of the Constitution of the United States. Art. 1, § 10.

4. An action to recover the penalty under the statute is an action *ex contractu,* and when the sum demanded does not exceed two hundred dollars a justice of the peace has jurisdiction.

(*Branch* v. *R. R. Co.,* 77 N. C., 347; *Lea* v. *Pearce,* 68 N. C., 76; *Parsley* v. *Nicholson,* 65 N. C., 207; *Wilmington* v. *Davis,* 63 N. C., 582; *Edenton* v. *Wool,* 65 N. C., 379, cited and approved.)

CIVIL ACTION tried on appeal from a justice's court at Fall Term, 1880, of WARREN Superior Court, before *Graves, J.*

The action was instituted by the plaintiff in the justice's court, to recover the sum of one hundred and fifty dollars, due by penalty given by the act of 1875, ch. 240, § 2, which reads as follows: "It shall be unlawful for any railroad company operating in this state, to allow any freight they may receive for shipment, to remain unshipped for more than five days, unless otherwise agreed between the railroad company and the shipper, and any company violating this section, shall forfeit and pay the sum of twenty-five dollars for each day said freight remains unshipped, to any person suing for the same."

The plaintiff complained, that on the 28th day of November, 1878, he delivered to the defendant company at their depot in Warren county (Warrenton), for shipment, the following described freight, to wit, one package containing hides and leather, weighing about five hundred and forty pounds, which was then received by them for shipment, and the defendant did unlawfully and negligently allow said freight to remain unshipped, at their said depot in said county from the said 28th day of November, 1878, until the 9th day of December, 1878, being more than five days from the day it was received by them for shipment, until it was shipped, to wit, eleven days; and demanded judgment against the defendant for the penalty thus incurred.

It was shown on the trial, that one O. P. Shell, was agent of the defendant company at Warrenton depot, that he lived at Warrenton, three miles from the depot, and ran a hack between the points.

The plaintiff offered in evidence, a receipt for the hides alleged to have been delivered to the defendant for shipment, which is as follows:

RALEIGH AND GASTON RAILROAD COMPANY,
November 28, 1878.
Received of E. Katzenstein, one bundle of hides,  540

44

pounds in apparent good order, marked Edwards & B., to be sent to Boston, Mass.

(Signed)          O. P. SHELL, Agent.

The admission of the receipt was objected to, because it was not signed by Shell, but by one Terrel for him. It was shown that at the depot, for two years, Terrel had attended to the business of receiving and forwarding freight for Shell, and issuing passenger tickets, and all the business was done in the name of Shell, as agent, and at his request; that he received his compensation from the agent, Shell, who received his pay from the company; that he received the hides from the plaintiff on the day the receipt bears date; that he put them in defendant's warehouse, gave plaintiff the receipt offered in evidence, and afterwards shipped them on defendant's cars; that he was in the habit of telegraphing to the superintendent at Raleigh, in Shell's name for cars to carry off freight from that depot which were sent in answer to these telegrams; that the superintendent of the road was frequently at that depot while Terrel was attending to the duties of the office; that on one occasion on the cars, the superintendent requested the plaintiff to notify him if Terrel failed to ship off his goods promptly. The objection of the defendant was overruled and the receipt admitted in evidence, to which the defendant excepted.

It was also in evidence that the hides remained in the warehouse of the defendant eleven days from the date of this dealing, and there was no agreement that they should not be shipped immediately. It was not the custom of the company to receive freight in advance, and none was demanded in this case, but was paid at the point of destination.

There were several points of law raised and urged by the defendant's counsel on the trial:

I. That there was no evidence to go to the jury of the delivery of the bale of hides to the defendant; that it was not

shown that Terrel who signed the receipt was the agent of the company, or had any authority to bind it in any way; that Shell was the agent of the company, and had no authority to appoint a sub-agent; that Terrel was Shell's agent, and not the agent of the company and was not known or recognized by the company as its agent.

2. That under the constitution, (art. 9, § 5) all penalties, forfeitures, &c., are given to the county school fund, and it is provided therein, that they shall belong to, and remain in the several counties, and shall be faithfully appropriated to maintaining and establishing free public schools in the several counties in the state, and that the plaintiff could not recover in this action in his own name.

3. That the act of the general assembly giving this penalty, (laws of 1874–'75, ch. 240, § 2) under which this action was brought, was in violation of article one, section ten of the constitution of the United States, which provides that no state shall pass any law impairing the obligation of contracts, and was therefore unconstitutional and void.

On the first point, the court charged the jury that there was evidence to be considered by them that Terrel was the agent of the defendant company, and if they should so find that he was the company's agent, they would find that plaintiff's goods were delivered to defendant company, at the date of the receipt for the purpose stated in it.

On the second point, the court charged the jury, the penalty did not go to the common school fund, and the plaintiff had the right to sue for and recover it, in his own name, if they found the other facts for the plaintiff. Defendant excepted.

On the third point, the court charged the jury that the act of 1874–'75, was not unconstitutional. Defendant excepted.

The jury found a verdict for the plaintiff, and from judgment thereon, the defendant appealed.

*Messrs. Gilliam & Gatling,* for plaintiff.
*Mr. J. B. Batchelor,* for defendant.

ASHE, J. As to the exception taken to the admission of
the receipt given by Terrel in the name of Shell, we concur
with the ruling of His Honor. There was abundant proof
to go to the jury that Terrel was the agent of the defendant.
An agent is one who is employed by another to do some act
or transact some business on his account. Story on Agency,
§ 3; Parsons on Contracts, pp. 39 *et seq.* It is not necessary
to show the appointment of an agent; his agency may be
inferred from the relations of the parties, and the nature of
the employment. Bouvier's Law Dict., 83.

It was in evidence that Shell was the regularly appointed
agent of defendant company at their Warrenton depot, but
that he lived three miles away from the depot, and was oc-
cupied in driving a hack from Warrenton to the depot.
Terrel lived at the depot, and for two years before this ac-
tion was commenced, had attended to the business of the
office at that point, and had discharged the duties of agent
in receiving and forwarding goods, selling tickets, sending
telegrams to the superintendent, ordering cars to be sent,
&c., all of which was done in the name of Shell, with the
knowledge and acquiescence of the defendant, for it is im-
possible that he should have discharged all of these duties
pertaining to the office of agent, for such a length of time,
without their knowledge and approval. If he was not their
agent, and had no right to bind them by his acts, then the
defendant company had been shipping freight and doing
other business as carriers for two years without responsibil-
ity. If he was not their agent, why did the superintendent
tell the plaintiff to notify him if Terrel did not ship his
goods promptly? It matters not whether Terrel signed the
receipt with Shell's name, or that of the company, or whether
he was paid for his services by the one or the other, if he

transacted the business of the company, and performed the duties of an agent on their account, with their knowledge, or with their acquiescence, he was their agent, and they were bound by any act of his within the scope of the authority impliedly given.

As to the second exception of the defendant, we think it was as groundless as that taken to the agency of Terrel. The action was properly brought in the name of the plaintiff. Article nine, section five of the constitution does give to the county school fund all monies, stocks, bonds, and other property belonging to a county, the nett proceeds of the sale of estrays, the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties, for any breach of the penal or military laws of the state; but there is a distinction between those penalties that accrue to the state, and those that are given to the person aggrieved, or such as may sue for the same, and no doubt this distinction was in the contemptation of the framers of the constitution when they adopted that section. There are many penalties given against officers and others whom no one is authorized to sue, and those when collected, belong to the state. It must be this class of penalties that is given to the county school fund. If it was intended by the constitution to give them all penalties, as well those that belong to the state as those that are given to the party aggrieved or common informer, then the statutes giving penalties in the both cases would become a "dead letter;" for there might be, now and then, found a person malicious enough, but none so patriotic and unselfish as to bring an action for a penalty and incur responsibility for costs, when he knew the fruits of his suit would fall into other hands. If the penalty sought to be recovered in this action belongs to the county school fund, then all penalties must go the same way, and hereafter, the plaintiff who amerces a sheriff in the sum of one hundred dollars for not serving his process, will collect it

for the benefit of the school fund of his county. That cannot be the meaning of the constitution.

As to the third exception, we need only refer to the case of *Branch* v. *Wilmington and Weldon R. R. Co.*, 77 N. C., 347, where this court expressly decided that the section in question of the act of 1874–'75 was not in violation of the constitution of the United States.

In this court the defendant, as he had the right to do, raised an objection to the jurisdiction of the justice's court, and insisted that even if the plaintiff had the right to maintain this action in his own name, the justice of the peace had no jurisdiction of the action; for the constitution defines and prescribes the jurisdiction of the justice of the peace by providing that "the several justices of the peace shall have jurisdiction of civil actions wherein the sum demanded shall not exceed the sum of two hundred dollars, and wherein the title to real estate shall not be in controversy, (Art. IV, § 27) that to give him jurisdiction it must not only be shown that it is a civil action, but that it was founded on contract. That is true; but then is a penalty a contract, or is it in the nature of a contract?

When this court has found itself "afloat" upon the "uncertain sea" of code interpretation, it has necessarily and very properly had recourse to the "old landmarks" established under the former system of pleading, as guides through the mist that but too frequently envelopes the practice under the provisions of the code. For although the distinction between actions at law, and suits in equity and the forms of actions are abolished, and there is in this state but one form of action, it is only the name and form of the action that are abolished; the essential principles are preserved. Under the present system when the plaintiff sets forth in his complaint, as he is required to do, a plain and concise statement of the facts constituting his cause of action, the principles that govern his cause of action under

the common law and equity pleadings are still applicable, as indicating the nature of the grievance, the evidence required, and the means of relief, and the action is just as much an action of trespass, detinue, or debt, as if it had been called so in the pleadings. Bliss on Code Pleading, 7 and 8; *Lee* v. *Pearce*, 68 N. C. 76; *Parsley* v. *Nicholson*, 65 N. C., 207.

In common law pleadings the action of debt was the remedy to recover a debt *eo nomine* and *in numero*; it was founded upon contract, and in this respect differed from *assumpsit*, which was always founded upon a promise. *Simonton* v. *Borrel*, 21 Wendell, 362.

The action of debt then, thus founded upon contract, was an appropriate remedy, upon all legal liabilities upon simple contracts, whether written or unwritten; upon notes, whether with or without seals; and *upon statutes by a party grieved* or by a *common informer;* whenever the demand was for a sum certain or was capable of being readily reduced to a certainty. 1 Chitty's Pleading, 123. As for example a penalty imposed by a statute, though the amount is uncertain, and is to be fixed by the court between five and fifty dollars. *Rockwell* v. *Ohio*, 11 Ohio, 130.

But why was debt an action sounding in contract the proper remedy for a penalty given by a state? The learned jurists whose cumulative wisdom formed the common law system of pleading, which has been characterized by some of its eulogists as the *perfection of reason*, must have had good grounds for classifying penalties among those subjects of action denominated *ex contractu* as distinguished from torts. The only explanation we have been able in our researches to meet with on this subject is to be found in 3 Blackstone's Commentaries, 160. That learned judge and commentator says: "There are some contracts implied by law. Of this nature are, first, such as are necessarily implied by the fundamental constitution of government, to

which every man is a contracting party. And thus it is, that every person is bound and hath agreed to pay such particular sums of money as are charged on him by the sentence or assessed by the interpretation of the law. For it is a part of the original contract entered into by all mankind, who partake the benefit of society, to submit in all points, to the municipal constitutions and local ordinances of that state, of which each individual is a member. Whatever, therefore, the law orders one to pay, that becomes instantly a debt which he hath beforehand *contracted* to discharge."

In the case of *Wilmington* v. *Davis*, 63 N. C., 582, Judge RODMAN held that a justice of the peace had jurisdiction of a penalty under two hundred dollars; but it is objected that that was a *dictum:* be it so, yet it was an authority from a very respectable source, which was afterwards cited and approved in the case of the town of *Edenton* v. *Wool*, 65 N. C., 379, where this court held that an action for a penalty for a breach of a town ordinance was technically a civil action arising out of *contract*.

There is no error. The judgment must be affirmed.

No error. Affirmed.