(Branch v. The Railroad, 77 N.C. 347; Katzenstein v. The Railroad,84 N.C. 688; Whitehead v. The Railroad, 87 N.C. 255; cited and approved). *Page 362 
The following is a copy of so much of the case stated on appeal as is necessary to a proper understanding of the opinion of the Court:
"The plaintiff declared for the penalty of $25 per day, for failing to ship twenty-seven bags of rice, as freight, from Mount Olive to Goldsboro, from the 21st day of November, 1884, to the 21st day of March 1885.
"A. D. McGowan, the plaintiff, was introduced as a witness for himself, and testified that he got the bill of lading for said rice from Robert Merritt in the month of December, 1884. John H. Toler was agent of defendant at Mount Olive. Witness saw the rice on the 21st day of March, 1885, at defendant's warehouse at Mount Olive. It was marked `G'. He took three sacks of it home, and shipped the balance to Henry Lee Co., Goldsboro, that day, taking a new bill of lading therefor.
"On cross-examination, the witness testified that he went to Mount Olive once or twice between the 21st day of November, 1884, and the 21st day of March, 1885.
"Robert Merritt was introduced by plaintiff, and testified that he carried the twenty-seven bags of rice in the Fall of 1884, to Mount Olive, and put them in the warehouse of the defendant, and took from the agent the bill of lading referred to in the testimony of the preceding witness, and that he delivered said bill to the plaintiff; that he told the agent to ship to Henry Lee Co., Goldsboro, and the agent said he would ship it in two or three days. The said bill of lading was put in evidence. The plaintiff rested his case.
"The defendant introduced J. H. Toler, who testified that he was agent of defendant at Mount Olive in November, 1884, and that the bill of lading was signed by him; that the rice delivered by Robert Merritt, the next preceding witness, was shipped according to said bill of (420) lading; that there was a lot of rice in the warehouse which was not shipped, and which was delivered by one Phillips and one Garner for the plaintiff, and that orders were to be given for shipping the same when the whole lot should be delivered, and that witness never received any order to ship same; that plaintiff, by his agents, several times deposited rice for shipment; that he had no instructions not to ship the rice delivered by Robert Merritt, and the same was shipped; that he, Toler, had no directions from the plaintiff about shipping rice generally.
"The defendant proposed to ask the witness the following question, viz: `Did persons who delivered rice for the plaintiff, give any instructions at the time of delivery in regard to the time of shipment?' Objected to by plaintiff. Objection sustained. Defendant excepted. *Page 363 
"On cross-examination, the witness testified that he was not now agent for the company, and that it was his custom to enter freight on the books when shipped, and not before.
"The plaintiff then proposed to ask the witness: `Have you examined the defendant's books, and do they not show that this lot of rice was not entered?' Objected to by defendant on the ground that the books were the best evidence. Objection overruled. Defendant excepts. The witness answered, `I do not think I have examined the defendant's books. I do not remember whether this lot of rice was on the books. I think the books show shipments between November 21st, 1884, and March 21st, 1885.'
"After the evidence was closed, and before the charge was delivered to the jury, His Honor asked the defendant's counsel if he insisted that any instructions were given by the plaintiff, or his agents, not to ship the rice about which the controversy arose; to which he replied, he did not. That the only question was, whether or not the rice had been shipped; and that His Honor might answer all the issues except the sixth, in favor of the plaintiff. (421)
"The defendant's attorney insisted that the plaintiff could not recover, because of the following words in the bill of lading, viz: `No liability will be assumed for wrong carriage or wrong delivery of goods that are marked with initials, numbered, or imperfectly marked.'
"His Honor reserved the question, and charged the jury as follows, viz: `If you find the first issue in the affirmative, the contract made by the defendant with the plaintiff, as set out in the bill of lading, was to ship the twenty-seven bags of rice in a reasonable time, and the law has fixed such time to be five days after its receipt, unless it was otherwise agreed. You will then proceed to inquire whether the rice was shipped within the time named, if not, was it by reason of any agreement made at the time of delivery? This will depend upon your finding upon the issue. If the rice was shipped, as alleged by the defendant, and testified to by Toler, you will answer the last issue in the negative. If, however, you find upon the evidence, that it was not shipped until March 21st, 1885, you will answer the issue in the affirmative. The defendant sets up no excuse for a failure to ship, if there was such failure. The burden of proof is upon the plaintiff upon the issues. You will find the facts as you may find the preponderance of the evidence. The plaintiff is confined to the rice delivered by Merritt, and you cannot consider the evidence in regard to the Phillips and Garner rice, except as throwing light upon the question as to whether the Merritt rice was, or was not, shipped.'" *Page 364 
At the conclusion of the charge, and before the case was given to the jury, his Honor asked counsel of both parties, if any other instruction was desired, to which was replied, there was none.
 The jury returned a verdict for the plaintiff. His Honor decided the question reserved against the defendant.
(422) Motion by defendant for new trial. Motion refused. Judgment for plaintiff.
The issues submitted to the jury, and the responses to them were as follows:
"1. Did the plaintiff on the 21st day of November, 1884, deliver to the defendant at its warehouse in Mount Olive, 27 bags of rice for shipment to Henry Lee Co., at Goldsboro?
Yes.
2. Was the said rice the property of the plaintiff?
Yes.
3. Was said rice received by defendant for shipment?
Yes.
4. Did plaintiff agree or consent that said rice should remain unshipped?
No.
5. Was said rice received by defendant without payment of freight, and without demand therefor?
Yes.
6. Did defendant unlawfully allow said rice to remain unshipped at its warehouse in Mount Olive, from the 21st day of November, 1884, until the 21st day of March, 1885?
Yes."
The following are the exceptions of the defendant:
"The defendant excepts to the rulings and judgment of his Honor in this action, as follows:
1. To the exclusion, on objection by plaintiff, of the following question asked by defendant of the witness, J.H. Toler, viz: `Did persons who delivered rice for the plaintiff, give any instructions at the time of delivery, in regard to the time of shipment?'
2. In not sustaining the objection of defendant to the following question, asked by plaintiff of the witness, J. H. Toler, viz: `Have you examined the defendant's books, and do they not show that this lot of rice has not been entered?'
(423) 3. His Honor erred in his charge, that `The contract made by defendant with the plaintiff, as set out in the bill of lading, was to ship in a reasonable time, and the law has fixed such time to be five days after its receipt, unless it was otherwise agreed. You will proceed to inquire whether the rice was shipped within the time named; if not, *Page 365 
was it by reason of any agreement made at the time of delivery. This will depend upon your finding upon the issue.'
4. His Honor erred in stating to the jury, that `Defendant sets up no excuse for a failure to ship, if there was such failure.'
5. His Honor erred in stating to the jury, that `They could not consider the evidence in regard to the Phillips and Garner rice, except as throwing light upon the question as to whether the Merritt rice, was or was not shipped.'
6. His Honor erred in deciding the question reserved against the defendant.
7. In giving judgment for plaintiff."
The first exception cannot be sustained. What the witness would have said in reply to the question specified does not appear, as it should do, but inferring that he would have answered in the affirmative, such evidence was irrelevant and immaterial. The plaintiff sued to recover penalties which he alleges the defendant incurred by its failure to ship twenty-seven bags of rice marked G, as it was bound to do within five days next after the rice was delivered to it for shipment. The evidence of the plaintiff, including the bill of lading, went to prove that the particular bags of rice in question, were delivered by his agent, the witness Robert Merritt, to the defendant, for shipment, on the 21st day of (424) November, 1884. The only witness introduced by the defendant, J. H. Toler, testified that he was agent of the defendant at the station where the rice was delivered for shipment at the time of the delivery. He admitted that the plaintiff's rice mentioned, was so delivered for shipment on the day named, and that he did not receive any instructions not to ship it, but on the contrary, he testified that he did ship it. Whether he did or not was the sole question at issue. It was therefore, immaterial to inquire whether persons who delivered rice for the plaintiff to the defendant, gave directions in respect to the time of shipment or not. As to the rice in question, the uncontradicted evidence, both of the plaintiff and defendant, went to show that no instructions were given not to ship it. This being so, in the course and order of such business, it was the duty of the defendant to ship the rice promptly. This leaves out of view the evidence of the witness of the plaintiff, *Page 366 
who testified that he told the agent of the defendant to ship it, and the latter promised to do so within two or three days.
Nor can the second exception be sustained. If it be granted that the book of shipments referred to should have been produced, the answer to the question objected to by the defendant, did not prejudice it; it was not favorable to the plaintiff at all, but rather tended to help the defendant. When the question objected to but allowed, elicits nothing material, and nothing to the prejudice of the party complaining, this is not ground for a new trial. A new trial in such case, will be granted, only when such party has suffered prejudice, or has probably done so.
We think also, that the third exception is groundless. It is clear that, in the absence of any express contract between the shipper of goods and the common carrier to the contrary, if the latter receives goods to be shipped, there is an implied agreement on its part, (425) to ship them within a reasonable time, and the Statute (The Code § 1907) has fixed that time to be within five days next after the carrier received the goods for shipment.
Besides, the Statute expressly provides, that the carrier — a railroad company — shall ship them within five days after it receives the goods for shipment, unless otherwise agreed between the company and the shipper. Branch v. W. W. R. R. Co., 77 N.C. 347.
And so, also, the fourth exception is without force. The Court manifestly intended to tell the jury, and did so in effect, that the defendant had not set up any legal excuse for failing to ship the goods, but it was cautious to say in that immediate connection, "if there was such failure," thus leaving to them the sole question submitted to them, as both parties conceded: "whether or not the rice had been shipped."
The fifth exception is without merit. The evidence in respect to the rice delivered by Phillips and Garner for the plaintiff to the defendant, was immaterial; that rice was not in question. The sole question was whether or not the twenty-seven bags of rice delivered by Merritt for the plaintiff, were shipped?
As we have seen, the evidence of the defendant, as well as that of the plaintiff, showed that as to that rice, there were no instructions not to ship it. This being true, what just or proper weight could the testimony as to the rice delivered by the parties first named, have upon the matter in issue?
Nor can the sixth exception prevail. The liability provided against by the exceptive words in the bill of lading, set forth in the exception, is to "wrong carriage, or wrong delivery of goods that are marked with initials, numbered, or imperfectly marked."
It is no part of the plaintiff's complaint that the rice was wrongly carried or wrongly delivered to a supposed consignee; the ground of *Page 367 
the action is, that it was not shipped at all. It was not set up as a matter of defence, that the rice was not marked with proper (426) directions, nor was any imperfection in that respect brought to the attention of the plaintiff within a reasonable time, as ought to have been done, if they existed.
What we have said, in effect disposes of the seventh exception. We see no reason why the Court ought not to have given the judgment it did give.
The twenty-sixth section of the defendant's charter, (2 Rev. Statutes, p. 344), provides that its officers may establish its rates of freights and fares in their discretion, not exceeding a maximum prescribed.
The counsel of the defendant appellant contended in his brief, that the Statute (The Code, § 1967), could not be construed as applying to it, or if so, as to the defendant, it was void, because it impaired the obligation of the contract between it and the State, in the respect mentioned.
The statutory provision last cited, applies to all railroad companies doing business in this State, and its obvious purpose is to compel them to ship over their roads respectively, goods delivered to them for shipment, within a reasonable time after receiving them, which is declared by its terms to be within five days next after that time. The Legislature has deemed it a just, reasonable and necessary regulation, and it is the plain duty of the Courts to give it effect, in all proper cases in the course of procedure. It is severe, it is true, but it is not unreasonable. It may be observed without serious inconvenience, and yet it seems that it is not infrequently disregarded, thus demonstrating the necessity for it.
That the Legislature has power to compel railroad companies, and other like common carriers, to discharge the duties and obligations they owe to the public, and individuals who travel on, and ship freights over their roads, by reasonable statutory regulations, and to compel a due observance of these by fines and penalties, is too well and thoroughly settled by judicial authority to admit of question. (427) Because of their quasi public nature — their relations to the public — the fact that they hold themselves out to the world as ready to carry freights for shippers, regularly, for reasonable compensation, and especially as to railroad corporations, because they have and exercise franchises, rights, privileges, and advantages of the public, and granted by the public authority, they are subject to just legislative control.
The Legislature may reasonably regulate their methods of business in a general way so as to promote the public good, having due regard for their rights in all respects. They have rights as well as the public, that the law protects, but to the extent that the exercise of their rights *Page 368 
by themselves concern and effect the public, the latter through its constituted authority, must have a voice in such exercise of them. This Court has repeatedly upheld the statute now under consideration, as a valid exercise of legislative authority. Indeed, it has been so upheld in its application to the defendant. Branch v. W. W. R. R. Co., supra. See, also, Katzenstein v. Railroad Company, 84 N.C. 688; Whitehead v.Railroad, 87 N.C. 255.
This Statute does not regulate the price of freights and fares of the defendant, nor does it purport to do so. It simply imposes a penalty of twenty-five dollars on each railroad doing business in this State, for every day it may fail to ship goods delivered to it for shipment, after five days next after such delivery, unless the shipper and the company agree otherwise. It leaves the defendant free to determine its charges for carrying freights — its only purpose is to compel it to ship goods promptly in the absence of agreement otherwise. The provision of the defendants' charter referred to above, does not abridge the power of the Legislature to make all reasonable regulations to expedite and render certain the shipments of freights over its roads. There is nothing in its charter that in terms, or by necessary implications, (428) indicates a purpose to part with such power.
It is difficult to understand how the Legislature could part with, or barter away any measure of an essential power of government, but if it could do so at all, it could only do so by positive grant, or by words and provisions so plain in their meaning as to leave no doubt of such purpose.Stone v. Farmers Loan and Trust Company, 116 U.S. 5, 307; Stone v.Railroad Company, Ibid., 347; Stone v. Railroad Company, Ibid., 352;Missouri Pacific Railroad Company v. Humes, 117 U.S. 512.
There is no error, and the judgment must be affirmed.
No error. Affirmed.
Cited: Hodge v. R. R., 108 N.C. 32; S. v. Stubbs, ibid., 775; Street v. Andrews, 115 N.C. 422; Sutton v. Phillips, 116 N.C. 505; Carter v.R. R., 126 N.C. 442; Grocery Co. v. R. R., 136 N.C. 404; Stone v. R.R., 144 N.C. 223; Efland v. R. R., 146 N.C. 138; Reid v. R. R.,150 N.C. 758. *Page 369