STATE OF NORTH CAROLINA, EX REL. LACY H. THORNBURG, ATTORNEY
    GENERAL, PLAINTIFF v. HOUSE AND LOT LOCATED AT 532 "B" STREET,
    BRIDGETON, N.C. 28519, BEING ALL OF LOT NO. 24, "B" STREET, SMALLWOOD
    SUBDIVISION, IN ACCORDANCE WITH THE PLAT RECORDED IN BOOK 150, PAGE 397
    OF THE CRAVEN COUNTY REGISTRY, AND BEING DEEDED TO THERESA M. BESSEY
    IN BOOK 1160, PAGE 142, CRAVEN COUNTY REGISTRY, DEFENDANT, FIRST
    UNION MORTGAGE CORPORATION AND THE NEW BERN-CRAVEN
    COUNTY BOARD OF EDUCATION, INTERVENING DEFENDANTS

No. 150PA92

(Filed 30 July 1993)

**Penalties § 7 (NCI4th)— RICO forfeited property—proceeds of
sale—public school fund**

    The RICO Act requires that the proceeds of any sale
of RICO forfeited property "shall be paid to the State Treasurer"
and does not permit such proceeds to be distributed to entities
other than the State. Therefore, N.C. Const. art. IX, § 7 re-
quires that the clear proceeds from the sale of RICO forfeited
property be paid to the public school fund. N.C.G.S.
§§ 75D-5(j)(1-7).

**Am Jur 2d, Forfeitures and Penalties §§ 67 et seq.**

Justice MEYER dissenting.

Justice PARKER did not participate in the consideration
or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31(b) prior
to review by the Court of Appeals of order entered by Butterfield,
J., in the 4 November 1991 Civil Session of Superior Court, Craven
County. Heard in the Supreme Court on 8 October 1992.

*Lacy H. Thornburg, Attorney General, by W. Dale Talbert,
Special Deputy Attorney General, for plaintiff-appellee.*

*Henderson, Baxter & Alford, P.A., by David S. Henderson
and Benjamin G. Alford, for intervening defendant-appellant
New Bern-Craven County Board of Education.*

*Tharrington, Smith & Hargrove, by George T. Rogister, Jr.,
and Allison Brown Schafer, for the North Carolina School
Boards Association, amicus curiae.*

STATE EX REL. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

*Randle L. Jones, for The North Carolina Association of Police Attorneys; Charles P. Wilkins, for The North Carolina Association of Chiefs of Police; and Edmond W. Caldwell, Jr., for The North Carolina Law Enforcement Officers' Association and The North Carolina Sheriffs' Association, amici curiae.*

EXUM, Chief Justice.

This is a forfeiture proceeding brought pursuant to Chapter 75D of our General Statutes — this State's Racketeer Influenced and Corrupt Organizations Act (RICO Act). There is no question regarding the State's right to a RICO forfeiture of the subject property. The issue which divides the State and the appealing intervening defendant, The New Bern-Craven County Board of Education (Board), concerns how the proceeds of a sale of the forfeited property shall be distributed in light of Section 7 of Article IX of the North Carolina Constitution, which provides:

Sec. 7. **County School Fund.**

All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

The trial court concluded that this constitutional provision has no application to RICO forfeitures and that proceeds from the sale of RICO forfeited property may be distributed according to the terms of the RICO Act. It ordered that all proceeds from the sale of the forfeited property after payment to the lienholder, intervening defendant First Union Mortgage Corporation, be paid one-half to the State Treasurer and one-half to the State Bureau of Investigation.

The RICO Act provides in section 75D-5(a) that certain described property "is subject to forfeiture to the State. Forfeiture shall be had by a civil procedure known as a RICO forfeiture proceeding." N.C.G.S. § 75D-5(a) (1990). It provides in section 75D-5(d) that a RICO forfeiture proceeding shall be "prosecuted only by the Attorney General of North Carolina or his designated representative." N.C.G.S. § 75D-5(d).

STATE EX REL. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

The trial court's order concerning distribution of the proceeds of the sale of the RICO forfeited property was entered pursuant to section 75D-5(j) of the RICO Act, which provides:

Subject to the requirement of protecting the interest of all innocent parties, the court may, after judgment of forfeiture, make any of the following orders for disposition of the property:

(1) Destruction of the property or contraband, the possession of, or use of, which is illegal;

(2) Retention for official use by a law enforcement agency, the State or any political subdivision thereof. When such agency or political subdivision no longer has use for such property, it shall be disposed of by judicial sale as provided in Article 29A of Chapter 1 of the General Statutes of North Carolina, *and the proceeds shall be paid to the State Treasurer*;

(3) Transfer to the Department of Cultural Resources of property useful for historical or instructional purposes;

(4) Retention of the property by any innocent party having an interest therein, including the right to restrict sale of an interest to outsiders, such as a right of first refusal, upon payment or approval of a plan for payment into court of the value of any forfeited interest in the property. The plan may include, in the case of an innocent party who holds an interest in the property through an estate by the entirety, or an undivided interest in the property, or a lien on or security interest in the property, the sale of the property by the innocent party under such terms and conditions as may be prescribed by the court and the payment into court of any proceeds from such sale over and above the amount necessary to satisfy the divided ownership value of the innocent party's interest or the lien or security interest. *Proceeds paid into the court must then be paid to the State Treasurer*;

(5) Judicial sale of the property as provided in Article 29A of Chapter 1 of the General Statutes of North Carolina, *with the proceeds being paid to the State Treasurer*;

(6) Transfer of the property to any innocent party having an interest therein equal to or greater than the value of the property; or

(7) Any other disposition of the property which is in the interest of substantial justice and adequately protects innocent parties, *with any proceeds being paid to the State Treasurer.*

N.C.G.S. §§ 75D-5(j)(1-7) (emphasis added).

From the trial court's order the Board appealed, and, because of the importance of the question presented, we allowed the Board's petition for review prior to determination by the Court of Appeals. Concluding that the constitutional provision controls the disposition of the proceeds of sale and requires that these proceeds be paid to the Board for the support of the New Bern-Craven County public schools, we reverse.

The trial court heard the case and based its order on stipulated facts as follows:

Theresa M. Bessey (hereinafter "Bessey") was the sole owner of a house and lot located at 523 "B" Street, Smallwood Subdivision, Bridgeton, North Carolina, which are the subject of this forfeiture proceeding. Between 17 August 1988 and 1 December 1989, Bessey sold from these premises controlled substances on six separate occasions to an undercover agent of the North Carolina State Bureau of Investigation (SBI). On the basis of these six sales, criminal charges were brought against Bessey; and on 28 June 1990 Bessey pled guilty to six separate violations of N.C.G.S. § 90-95 for which she was sentenced to ten years' imprisonment. At the time Bessey entered her guilty pleas she consented to the RICO forfeiture of the premises from which the illegal sales were made.

This RICO forfeiture proceeding was begun by a civil complaint filed 11 June 1990. The RICO complaint alleged Bessey's underlying criminal offenses occurring on the subject premises as the basis for the RICO forfeiture. Bessey answered, consenting to the forfeiture. The Board, after being permitted to intervene, answered and alleged that under Article IX, Section 7, it was entitled to any "clear proceeds" which might result from the sale of the forfeited property. The Board moved for summary judgment in accordance with its answer. Plaintiff moved for summary judgment that the subject property be forfeited and sold and that the

net proceeds from the sale be distributed one-half to the State Treasurer and one-half to the State Bureau of Investigation (SBI). The trial court granted plaintiff's motion for summary judgment.

We first disagree with plaintiff's contention that the RICO Act directs that the proceeds from the sale of RICO forfeited property may be distributed to entities other than the State. While the RICO Act provides for a number of alternative dispositions of RICO forfeited property, it consistently, and in every instance, requires that the proceeds of any sale of such property "shall be paid to the State Treasurer." §§ 75D-5(j)(1-7).

Since the RICO Act provides for distribution to the State of the proceeds of any sale of RICO forfeited property, Article IX, Section 7, requires that those proceeds be paid directly to the public school fund. *Mussallam v. Mussallam*, 321 N.C. 504, 364 S.E.2d 364 (1988). In *Mussallam*, we held that the disposition of proceeds from a civil appearance bond forfeiture were governed by Article IX, Section 7. *Id.* at 510, 364 S.E.2d at 367. The appearance bond's terms provided that the sureties were bound to pay the State of North Carolina if the principal failed to appear. We concluded that whenever the proceeds resulting from a forfeiture were required to be paid to the State, Article IX, Section 7, required that they be paid to the public school fund. We stated:

> We interpret the provisions of Section 7 relating to the clear proceeds from penalties, forfeitures and fines as identifying two distinct funds for the public schools. These are *(1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state*; and (2) the clear proceeds of all fines collected for any breach of the criminal laws. . . . *Thus, in the first category, the monetary payments are penal in nature and accrue to the state regardless of whether the legislation labels the payment a penalty, forfeiture or fine or whether the proceeding is civil or criminal.*

> Applying this reasoning to the bond at issue here, it is clear that the superior court judge set the bond to ensure the husband's appearance. The punishment for his failure to so appear would be immediate forfeiture of the bond. *The terms of the bond specifically made its proceeds payable to the State of North Carolina should it be forfeited. The bond therefore falls within the parameters of the first category.*

*Id.* at 508-09, 364 S.E.2d at 366-67 (emphasis added).

## STATE ex rel. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

*Mussallam*'s analysis relied on *Hodge v. R.R.*, 108 N.C. 17, 12 S.E. 1041 (1891), and *Katzenstein v. R.R. Co.*, 84 N.C. 688 (1881). *Katzenstein* was an action by a shipper of goods against the Raleigh and Gaston Railroad brought pursuant to a statute which made it unlawful for a railroad company to allow freight to "remain unshipped for more than five days." 84 N.C. at 689. The statute also provided that "any company violating this section, shall forfeit and pay the sum of twenty-five dollars for each day said freight remains unshipped, to any person suing for the same." *Id.* Defendant railroad appealed from a verdict for plaintiff, contending among other things that plaintiff could not sue under the statute because the Constitution (then Article IX, Section 5) gave, as it does now, the "clear proceeds of all penalties and forfeitures" to the county school fund. This Court, finding no error below, concluded that the constitutional provision applied only to penalties and forfeitures which accrued to the State, saying "there is a distinction between those [penalties and forfeitures] that accrue to the state, and those that are given to the person aggrieved, or such as may sue for the same, and no doubt this distinction was in the contemplation of the framers of the constitution . . . ." 84 N.C. at 693.

Conversely, *Hodge* was an action brought by the State on the relation of W.T. Hodge against the Marietta and North Georgia Railroad pursuant to a statute which assessed a $500 penalty against corporations for failing to make certain reports, "to be sued for in the name of the State of North Carolina in the Superior Court of Wake County." 108 N.C. at 18, 12 S.E. at 1041. This Court affirmed the trial court's sustaining of defendant's demurrer to the complaint on the ground that only the State could bring the suit, not the State on the relation of some individual. The Court, distinguishing *Katzenstein*, said: "But here the statute imposing the penalty provides for its recovery by the State, and the Constitution devotes such penalties and forfeitures to the school fund." *Id.* at 19, 12 S.E. at 1041.

Under our analysis in *Mussallam, Katzenstein,* and *Hodge,* Article IX, Section 7, requires that clear proceeds accruing to the State from any forfeiture must be paid to the public school fund. The RICO Act provides that the proceeds from the sale of RICO forfeited property accrue to the State. Such proceeds must therefore be paid to the public school fund.

The trial court erred in granting plaintiff's motion for summary judgment as to the distribution of the proceeds of sale of the

RICO forfeited property. It should have granted summary judgment for the Board on this issue. The decision of the superior court is therefore

REVERSED.

Justice Parker did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The forfeiture of the property is not in issue on this appeal. We are here presented solely with the validity of the trial judge's disposition of the proceeds of the forfeiture.

I believe that the majority has erred in holding that Article IX, Section 7 of our state Constitution controls the disposition of forfeitures ordered under the state RICO Act. It is my position that the trial judge correctly disposed of the forfeited property pursuant to our RICO Act in his order of final judgment of forfeiture and order of disposition entered on 5 February 1992 by awarding 50% of the net foreclosure proceeds to the State Bureau of Investigation and 50% to the State Treasurer.

Forfeitures ordered and distributed pursuant to the RICO Act are remedial in nature in that they are intended to compensate the state, local governmental agencies, and other persons for losses incurred due to racketeering activity. Therefore, RICO forfeitures are not penal in nature, and their distribution is not controlled by Article IX, Section 7.

It is my position that all forfeitures ordered pursuant to the RICO Act, regardless of to whom the proceeds ultimately accrue, are remedial and not penal in nature and are intended to compensate particular parties, including the state, who suffer loss from organized racketeering activity. In *Mussallam v. Mussallam*, 321 N.C. 504, 364 S.E.2d 364, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 915 (1988), this Court interpreted the provisions of Article IX, Section 7 relating to the clear proceeds from penalties, forfeitures, and fines as identifying two distinct funds for the public schools. "These are (1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws." *Id*. at 508-09, 364 S.E.2d at 366-67.

**STATE** ex rel. **THORNBURG v. HOUSE AND LOT**

[334 N.C. 290 (1993)]

With regard to the second category, we held that "it is quite apparent from the words of section 7 that the clear proceeds of all fines collected for the violation of the criminal laws are to be used for school purposes." *Id.* at 509, 364 S.E.2d at 367. The Court indicated that "[o]ne could not legitimately argue that the violation of a criminal law is not a 'breach of the penal laws,'" *id.*; however, the Court defined the term "penal law" as used in the context of Article IX, Section 7 as meaning "laws that impose a monetary payment for their violation," *id.* In the instant case, the state RICO Act simply does not impose a monetary payment or fine for its violation. The Court in *Mussallam*, stated that such payments are punitive rather than remedial in nature only when they are intended to penalize the wrongdoer rather than to compensate a particular party. *Id.* The intent of the forfeiture action before the Court is not to punish the criminal defendant, but to remove the illegally obtained tools of the criminal trade from private use and distribute them back into the state's economy. The forfeiture serves only to compensate or restore aggrieved parties for losses resulting from the illegal diversion of assets from the public economy. This is evidenced by the fact that forfeitures pursuant to the RICO Act are in no way tied to the criminal proceedings nor their dispositions.

*Mussallam* should only be read so as to clearly establish the rule of law that Article IX, Section 7 of the North Carolina Constitution controls the disposition of penalties and forfeitures only where "monetary payment is penal in nature and accrue[s] to the state." *Id.* Implicit in the Court's decision are the further conclusions that the disposition of monetary payments, whether labeled by the legislature as penalties or forfeitures and whether imposed in civil or criminal actions, is not controlled by Article IX, Section 7 if the proceeds are remedial in nature and intended to compensate a particular party for a loss or if the proceeds of the penalty or forfeiture accrue to someone other than the state. Thus, if it accrues to the state, a penalty or forfeiture intended to penalize a wrongdoer falls within the first category identified by the Court in *Mussallam*, and its disposition is controlled by the Constitution. However, a remedial penalty or forfeiture intended to compensate a particular party *or* one that does not accrue to the state does not fall within either the first or second category identified by the Court in *Mussallam*, and its disposition is not controlled by the Constitution.

STATE EX REL. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

By specifically authorizing property forfeited under the RICO Act to be distributed in whole or in part to agencies and persons other than the state, the legislature has indicated its clear intent that some proceeds from RICO forfeitures are not to "accrue" to the state. Under *Mussallam*, only forfeitures that accrue to the state are controlled by Article IX, Section 7. Therefore, the constitutional provision does not control the disposition of the RICO Act forfeiture ordered in this case.

In approaching the question presented by this appeal, the Court should be guided by the following well-established principles. All statutes are presumed to be constitutional, and every presumption is to be indulged in favor of validity. *Martin v. N.C. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665 (1970). The burden of showing a statute's unconstitutionality is on the person who attacks it. 12 N.C. Index 3d, *Statutes* § 4.1 (1978). If a statute is susceptible to two interpretations, one constitutional and the other unconstitutional, the constitutional interpretation must be adopted. *In re Arthur*, 291 N.C. 640, 231 S.E.2d 614 (1977). The intent of the legislature controls the interpretation of a statute. *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978); *State v. Hart*, 287 N.C. 76, 213 S.E.2d 291 (1975). In ascertaining the intent of the legislature, the courts should consider the language of the statute, the spirit of the act and what it sought to accomplish, and the effect of proposed interpretations. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E.2d 281 (1972); *Electric Service v. City of Rocky Mount*, 20 N.C. App. 347, 201 S.E.2d 508, *aff'd*, 285 N.C. 135, 203 S.E.2d 838 (1974). It is presumed that the legislature enacted a statute with care and deliberation and with full knowledge of prior and existing law. *State v. Benton*, 276 N.C. 641, 174 S.E.2d 793 (1970). If these well-established principles are adhered to in this case, the order of the trial judge must be upheld.

Article IX, Section 7 provides in pertinent part:

  [T]he clear *proceeds of all* penalties and *forfeitures* and of all fines *collected* in the several counties *for any breach of the penal laws of the State*, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7 (emphasis added).

**STATE EX REL. THORNBURG v. HOUSE AND LOT**

[334 N.C. 290 (1993)]

The emphasized language makes it unmistakably clear that all "forfeitures," whether they arise in criminal or civil actions, are not covered by this provision. Only those forfeitures that are penal in nature are covered by this provision. Forfeitures that are not penal in nature are not covered and may be disposed of by our legislature as it sees fit. It has seen fit to dispose of the proceeds of the property in question in this case according to the state RICO Act. N.C.G.S. ch. 75D (1990).

The trial judge was correct in holding that RICO forfeitures are primarily remedial in nature and are therefore outside the mandate of Article IX, Section 7 of the state Constitution.

Key to the issue is the term "remedial," which is defined as "[a]ffording a remedy; giving means of obtaining redress; of the nature of a remedy." *Black's Law Dictionary* 1293 (6th ed. 1990).

> The underlying test to be applied in determining whether a statute is penal or remedial is whether it primarily seeks to impose an arbitrary, deterring punishment upon any who might commit a wrong against the public by a violation of the requirements of the statute, or whether the purpose is to measure and define the damages which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss having a causal connection with the breach of the legal obligation owing under the statute to such individual or class.

*Id.* at 1294. The RICO Act comports with this definition.

The Act itself makes clear that the "[c]ivil remedies under [Chapter 75D] are cumulative, supplemental and not exclusive, and *are in addition to the fines, penalties and forfeitures set forth in a final judgment of conviction of a violation of the criminal laws of this State as punishment for violations of the penal laws of this State.*" N.C.G.S. § 75D-10 (emphasis added).

The statement of legislative purpose and intent in enacting the law that precedes the substantive provisions of the RICO Act is as follows:

> (a) The General Assembly finds that a severe problem is posed in this State by the increasing organization among certain unlawful elements and the increasing extent to which organized unlawful activities and funds acquired as a result

STATE ex rel. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

of organized unlawful activity are being directed to and against the legitimate economy of the State.

(b) The General Assembly declares that the purpose and intent of this Chapter is: to deter organized unlawful activity by imposing *civil equitable sanctions* against this subversion of the [State's] economy by organized unlawful elements; to prevent the unjust enrichment of those engaged in organized unlawful activity; to restore the general economy of the State all of the proceeds, money, profits, and property, both real and personal of every kind and description which is owned, used or acquired through organized unlawful activity by any person or association of persons whether natural, incorporated or unincorporated in this State; and to provide compensation to private persons injured by organized unlawful activity. It is not the intent of the General Assembly to in any way interfere with the attorney-client relationship.

N.C.G.S. § 75D-2 (emphasis added).

The North Carolina General Assembly's intent in enacting the RICO Act is clear. The legislature, in recognizing the increasing organization among certain criminal elements and the resulting effect upon the state's economy, sought to deter such unlawful activity and to restore proceeds to the state's general economy. The statute's purpose is to prevent unjust enrichment and to restore unlawfully diverted property and capital back to the state's economy. The statute evidences the intent to compensate individual citizens and the state's economy, and therefore the measures are clearly and exclusively remedial in nature. The statute, on its face, expressly provides that a violation of the RICO Act is "inequitable and constitutes a civil offense only and is not a crime." N.C.G.S. § 75D-4(b).

The nature of the proceedings themselves fail to meet the criteria traditionally associated with penal or punitive actions. A RICO forfeiture proceeding is an *in rem* action against property, initiated by civil complaint and prosecuted only by the Attorney General of North Carolina or his designated representative. N.C.G.S. § 75D-5(c), (d). As such, it is an action against the property itself, and property itself is not an entity capable of being punished. The fact that individuals who are engaged in ongoing criminal enterprises may subjectively perceive a forfeiture as punitive is not dispositive.

STATE ex rel. THORNBURG v. HOUSE AND LOT

[334 N.C. 290 (1993)]

The forfeiture remedy as established by the RICO Act is obtained through a civil, *in rem* proceeding, and if not otherwise prescribed by the statute, the procedures to be used are governed by the Rules of Civil Procedure. N.C.G.S. § 75D-5(b). Such forfeitures are not imposed against an individual wrongdoer as an *in personam* action. The property owner's culpability, *mens rea*, intent, or criminal conviction are irrelevant to a successful forfeiture action. To the contrary, forfeitures *in rem* are based upon proof that the property was itself "guilty" of being used or acquired through illegal activity. The property is the defendant. Therefore, real property is subject to civil forfeiture "even if its owner is acquitted of — or never called to defend against — criminal charges." *United States v. 3120 Banneker Dr. N.E.*, 691 F. Supp. 497, 499 (D.C. Cir. 1988). In this regard, the United States Supreme Court stated in *Waterloo Distilling Corp. v. United States in re Personal Property*, 282 U.S. 577, 75 L. Ed. 558 (1931), that "[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate . . . . The forfeiture is no part of the punishment for the criminal offense." *Id.* at 581, 75 L. Ed. at 561.

Some discussion of the possible practical results of today's majority opinion is warranted. The outcome of the majority's decision, while appearing to be favorable to our school boards, may, in the long run, prove to be very unfavorable. Investigations that result in substantial forfeitures are complicated, time consuming, and expensive. Absent the compensation received from the various forfeiture statutes, law enforcement will not have the means, equipment, personnel, or money to devote to such investigations. Law enforcement, in light of current budget cuts, can ill afford to devote resources outside the clear realm of enforcement of the law. Officers will no doubt still diligently pursue their duties as to criminal enforcement, and arrests will be made. However, the additional hours needed to succeed in a successful forfeiture proceeding will be a luxury that law enforcement agencies will be unable to afford. Successful forfeiture proceedings naturally require extensive documentation, research, and additional personnel hours. If law enforcement agencies are unable to recoup these costs through distribution of forfeiture proceeds, such investigations might cease, in which event the school boards will receive nothing.

With law enforcement's resources already taxed to their limits, forfeiture proceedings would be a luxury that departments could

ill afford to pursue. I believe that the school boards would suffer in the long run from today's decision. Furthermore, it is no secret that proceeds from forfeitures are used to support various programs of state, county, and city law enforcement agencies, a number of them directly related to our schools. For instance, the Drug Awareness Resistance Education (D.A.R.E.) programs are overwhelmingly funded not by the school system, but by law enforcement. These programs could be a casualty of budget cuts necessitated by the allocation of forfeiture proceeds solely to the school boards. Likewise, school crossing guards are paid for not by the schools, but by law enforcement. These programs might also fall victim to today's decision, to say nothing of nonschool-related programs now supplemented with forfeiture proceeds.

The majority says that the RICO Act itself requires that the entire proceeds of any sale of forfeited property "shall be paid to the State Treasurer." This appears to be the key to the problem and a matter that can be easily remedied by the legislature by an amendment to the RICO Act providing a different disposition of the proceeds of the sale. I would point out that a number of similar forfeiture statutes do not contain this restriction.

N.C.G.S. § 14-269.1 provides for the forfeiture of firearms seized in violation of the state's concealed weapons law. Among the dispositions provided for at the court's discretion is turning the weapons over to law enforcement for official use. N.C.G.S. § 14-269.1(2) (1992). Likewise, a provision of the state's Controlled Substance Act provides for the forfeiture of property to law enforcement for official use. N.C.G.S. § 90-112(d)(1) (1990). Similarly, the provisions of the state's ABC laws provide for the use of seized property by law enforcement, N.C.G.S. § 18B-504(f)(3) (1989), and the provisions of the state's wildlife statute permit the legitimate utilization of property by a public agency when the property is not suitable for sale, N.C.G.S. § 113-137(i) (1990).

Existing case law, statutory interpretation, and legislative intent support the disposition of forfeiture assets to law enforcement as an appropriate remedial measure. The benefits of the state RICO Act to law enforcement, the citizenry, and the taxpayers of this state are substantial.

The following conclusions of the trial judge in this case are supported by his findings of fact and should be conclusive on this appeal: The defendant real property was subject to forfeiture pur-

suant to N.C.G.S. § 75D-5(a) and to distribution pursuant to N.C.G.S. § 75D-5(j); Article IX, Section 7 of the state Constitution governs the disposition of forfeitures that are penal in nature and accrue to the state but not those that are remedial or do not accrue to the State; the primary purpose and intent of the RICO Act and its forfeiture provisions is to provide the state and other persons a means of compensation for injury or loss caused by racketeering activity; the General Assembly has the authority to direct the disposition of proceeds generated by remedial *in rem* forfeitures to persons or entities other than the state; when the proceeds of remedial *in rem* forfeitures ordered under the authority of the RICO Act are distributed to persons or entities other than the state in accordance with the statute, they do not accrue to the state; the alleged racketeering activity damaged the general economy of the state and caused injury or loss to the State Bureau of Investigation; and the forfeiture of the defendant real property and distribution of the proceeds from its sale primarily has the remedial effect of partially compensating the state for the loss to its general economy and the State Bureau of Investigation for loss of special funds, both of which were incurred as a result of the alleged racketeering activity.

I vote to affirm the order of the trial judge.